**MURDOCK MACHINE & ENGINEERING COMPANY OF UTAH,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 88–1287.**

United States Court of Appeals,
Federal Circuit.

April 26, 1989.

Robert H. Koehler, Patton, Boggs & Blow, Washington, D.C., argued, for appellant. With him on the brief, was Joseph S. Mahaley.

James M. Kinsella, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With him on the brief, were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief, was Martha A. Klein, Sr. Trial Atty., Office of Counsel, Dept. of the Navy, of counsel.

Before BISSELL, Circuit Judge, BALDWIN, Senior Circuit Judge, and MAYER, Circuit Judge.

BISSELL, Circuit Judge.

Murdock Machine & Engineering Company of Utah (Murdock) appeals from the decisions of the Armed Services Board of Contract Appeals (ASBCA), *Murdock Mach. & Eng'g Co. of Utah*, ASBCA Nos. 20409, 27860, 28031, 88–1 BCA ¶ 20,354 (1987), denying Murdock's consolidated appeals. We reverse the ASBCA's decisions in Appeal Nos. 27860 and 28031 and remand. The jurisdictional question raised in Appeal No. 20409 need not be reached because of our reversal in the other two appeals. Appeal No. 20409, accordingly, is dismissed.

## BACKGROUND

A more detailed background appears in the ASBCA's opinion. *See id.* In 1971, the government awarded Murdock a $10,659,-612 fixed-price contract for supplying the United States Navy (Navy) with anti-submarine rocket (ASROC) launchers and related spare parts. Early in the performance of the contract, Murdock experienced substantial production problems, fell behind in its delivery schedule, and informed the Navy that contract performance could

**1412**

not be continued due to lack of financial resources. Concerned with timely receipt of ASROC launchers for new ships, the Navy procuring command provided Murdock with a $2,500,000 government-guaranteed loan and encouraged Murdock to apply for extraordinary contractual relief pursuant to Public Law 85–804, 50 U.S.C. §§ 1431–35 (1982). After evaluating Murdock's request, the Navy procuring command recommended that the Navy Contract Adjustment Board (NCAB) grant Public Law 85–804 relief and convert Murdock's contract to a cost reimbursement/no-fee contract because continued production of the ASROC launchers was "essential to the national defense."

On April 7, 1975, the NCAB granted Public Law 85–804 relief and converted the contract to a cost reimbursement/no-fee contract. The NCAB prepared and sent a draft decision to Murdock for comment, verbally notified Murdock and the Navy of its decision, and advised the parties to promptly initiate actions to comply with the requirements established by the decision.

Shortly thereafter, the Navy located another source of ASROC launchers, thus, obviating the need for production of new launchers by Murdock. The Navy procuring command notified Murdock and the NCAB that the command was withdrawing its recommendation for Public Law 85–804 relief because the ASROC contract was no longer "essential to the national defense." On April 17, 1975, the contracting officer (CO) sent Murdock a 10 day right to cure notice, and on May 16, 1975, terminated the contract for default because of Murdock's financial inability to perform and its anticipatory breach. Murdock appealed the CO's decision (No. 20409). Murdock filed for bankruptcy and its trustee submitted another claim alleging breach of contract by the Navy. When the CO failed to issue a decision, Murdock appealed (No. 27860). After the CO issued a decision, Murdock appealed a second time (No. 28031). The ASBCA denied Murdock's consolidated appeals. *Murdock,* 88–1 BCA ¶ 20,354 at 102,935.

OPINION

Murdock contends that the Navy's termination for default of its contract to produce rocket launchers was improper in that the government materially breached the contract under terms established by the April 7, 1975 decision of the NCAB. We agree.

In Appeal Nos. 27860 and 28031, the ASBCA held that the April 7, 1975, decision of the NCAB was not "self-executing." Because the NCAB's decision (1) had not been communicated to the appropriate officer for implementation, (2) was not implemented by a contractual document, and (3) was not signed by the NCAB chairman, all of which were required by regulation, the decision was not final. *Id.* (citing Armed Services Procurement Regulations (ASPR) §§ 17–202.2, 17–208.4(a), (b), and 17–208.-2(b)(ii) (1973), see 1973 Gov't Cont.Rep. (CCH) ¶ 35,252–257.56, which have been superseded by the Federal Acquisition Regulations located in Title 48, Chapter 1, subpart 50, of the Code of Federal Regulations).

As to the first point, ASPR 17–208.4 only requires that the NCAB's decision be communicated to the appropriate official. Regulation 17–208.4 neither suggests nor supports that a decision does not become final until such communication occurs.

■ The ASBCA cited ASPR § 17–208.2(b)(ii) as necessitating implementation by contractual document before the decision could be considered final. This section only requires that the contractual documents implementing the decision be submitted to the Naval Sea Systems Command "within 30 days after the close of the month during which it is executed." *Id.* None of the regulations cited by the ASBCA require implementation by a contractual document before the NCAB's decision could be considered final.

■ We also disagree with the ASBCA that a decision of the NCAB could not be final without the chairman's signature. *See* ASPR 17–208.4. There is nothing in the regulations that permits the chairman to act other than in accordance with the NCAB's decision. The chairman possesses

no independent authority to reconsider, modify, correct, or reverse the decisions of the NCAB. *See* ASPR 17–202.2.

 The ASBCA erred. The NCAB's April 7, 1975, decision was final and converted the fixed-price contract to a cost reimbursement/no-fee contract that obligated the government to pay Murdock its costs incurred in performing the contract.* The government materially breached the contract by failing to reimburse Murdock. That breach relieved Murdock of the default termination and its consequences. *Malone v. United States,* 849 F.2d 1441, 1446 (Fed.Cir.1988). The termination for default clause in Murdock's contract, *see* 32 C.F.R. §§ 7.103–11, 8.707 (1971), automatically converted Murdock's wrongful default termination into a termination for convenience. *Id.* A remand to the ASBCA is proper for a determination of quantum under the contract's termination for convenience clause. *See* 32 C.F.R. §§ 7.103.21(c), 8.701(a) (1971).

## COSTS

The government shall pay Murdock's costs.

REVERSED–IN–PART, DISMISSED–IN–PART, and REMANDED.

BALDWIN, Senior Circuit Judge, concurring in the result.

I concur in the result reached in appeals 27860 and 28031. Although I agree that appeal 20409 must be dismissed, I disagree that the government's motion to dismiss for lack of subject matter jurisdiction need not be reached. Ante at 1. I therefore write separately.

The government has moved this court to dismiss appeal 20409 for lack of subject matter jurisdiction. On June 3, 1988, the court denied, without prejudice, the government's initial motion. That motion was renewed in the briefs and at oral argument. The majority seeks to ignore this motion by refusing to "reach" the question. Appeal 20409 is then dismissed without explanation or reason. As Justice Rehnquist (joined by Chief Justice Burger and Justice Powell) remarked when dissenting from the Court's summary affirmance in *Buchanan v. Evans,* 423 U.S. 963, 96 S.Ct. 381, 46 L.Ed.2d 293 (1975), "[m]y dissent from that sort of [action] is based on my conviction that it is extraordinarily slipshod judicial procedure as well as my conviction that it is incorrect." *Id.* at 975, 96 S.Ct. at 387.

I fail to understand how the court cannot reach the question of subject matter jurisdiction, as it is the first consideration in all cases. *See, e.g., Mansfield, Coldwater & Lake Michigan Ry Co. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Unlike the majority, I would grant the government's motion, and dismiss appeal 20409 for lack of subject matter jurisdiction.

Section 16 of the CDA permits a contractor to proceed under the Act "with respect to any claim pending ... before the contracting officer or initiated" after the effective date of the statute. 41 U.S.C. § 601, Historical and Statutory Notes. The contracting officer issued a final decision terminating the contract for default on May 16, 1975. Appeal No. 20409 was filed on May 22, 1975. Murdock had no claim pending before the contracting officer on the effective date of the CDA, therefore the CDA does not apply to that decision.

In *Monroe M. Tapper & Associates v. United States,* 611 F.2d 354, 222 Ct.Cl. 34

---

* The government contends that any Public Law 85–804 relief request carries with it a sweeping exemption of all agency action from judicial review. Although Public Law 85–804 provides the agency unfettered discretion in considering requests for relief, *see Coastal Corp. v. United States,* 713 F.2d 728, 731 (Fed.Cir.1983); *Paragon Energy Corp. v. United States,* 645 F.2d 966, 975 (Ct.Cl.1981), neither Public Law 85–804 nor its implementing regulations give a contracting officer the right to repudiate the terms of an NCAB decision once final. The authority to reconsider, modify, correct, and reverse its decisions resides in the NCAB alone. *See* ASPR 17–202.2. Because the Board here did not reconsider, modify, correct or reverse its final decision, this court and the ASBCA have jurisdiction under the Contract Disputes Act, 41 U.S. C. §§ 605–10 (1982), to review the contracting officer's default termination of Murdock's modified contract.

(1979), a similar situation was considered by the Court of Claims, which determined that CDA jurisdiction over appeals from contract boards exists only where appellant's claim was pending before the contracting officer on the effective date of the Act, March 1, 1979. 611 F.2d at 359. That principle was later confirmed by this court in *North American Corp. v. United States*, 706 F.2d 1212 (Fed.Cir.1983). Therefore, appeal 20409 should be dismissed as outside this court's subject matter jurisdiction.

Murdock argues that we should exercise jurisdiction over Appeal No. 20409 under a theory of pendent jurisdiction similar to that expressed in *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 223 USPQ 465 (Fed.Cir.1984) because this court may wish to address the ASBCA's actions in appeal 20409. *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In the alternative, Murdock requests that we transfer appeal 20409 to the Claims Court, where, under the Wunderlich Act, 41 U.S.C. §§ 321–322, and the Federal Courts Improvement Act, Pub.L. No. 97–164, § 127, 96 Stat. 25, 38 (1982), suit should have been brought pursuant to that court's Tucker Act jurisdiction, 28 U.S.C. § 1491 *et seq.* At the same time, however, Murdock admits that "the issues [it] will address as the basis for its Appeal to this Court will likely relate only to the Board's decision in Nos. 27860 and 28031." Opposition to Motion to Dismiss at 1.

There is no need for this court to address this novel proposition where, as here, Murdock has not shown that it will be prejudiced as a result of the dismissal of appeal 20409. Indeed, Murdock could not show any prejudice because it has obtained complete relief as a result of the reversal of the other appeals. For the same reasons, transfer of appeal 20409 to the Claims Court is not in the interest of justice. 28 U.S.C. § 1404.