19 F.3d 41
 39 Cont.Cas.Fed. (CCH) P 76,712
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
John H. DALTON, Secretary of the Navy, Appellant,
v.
MURDOCK MACHINE AND ENGINEERING COMPANY OF UTAH, Appellee.
 No. 93-1440.
 United States Court of Appeals, Federal Circuit.
 Feb. 22, 1994.
 
 Before NEWMAN, PLAGER, and CLEVENGER, Circuit Judges.
 PLAGER, Circuit Judge.
 
 
 1
 The Navy appeals an Armed Services Board of Contracting Appeals (ASBCA) opinion[1] that quantifies the damages caused by the termination for convenience by the Department of the Navy (the Navy) of its contract with Murdock Machine and Engineering Company of Utah (Murdock). We affirm the judgment of the ASBCA in all respects except one.[2]
 
 BACKGROUND
 
 2
 Murdock was a military contractor. In 1971, Murdock contracted with the Navy to deliver, in return for $10,659,612.00, 28 Anti-Submarine Rocket (ASROC) launchers for deployment on destroyers. Murdock soon had difficulties that hindered its performance of the ASROC contract. In order to overcome these problems, in 1973 Murdock requested and received the Navy's guarantee on 90% of a commercial loan for 2.5 million dollars (the V loan[3]). Nonetheless, Murdock continued to experience difficulties, and the Navy did not receive its ASROC launchers.
 
 
 3
 From the fall of 1974 to the spring of 1975, Murdock negotiated with the Navy Contract Adjustment Board (NCAB) to reform the contract for the launchers, converting it from a fixed-price contract to a cost-reimbursement contract under the authority of Public Law 85-804, 50 U.S.C. Secs. 1431-35, which provides extraordinary support to contractors producing material deemed essential to the national defense. When a new source of rocket launchers became available in April of 1975, the Navy sent Murdock a 10 day cure notice. When no cure was forthcoming, the Navy terminated Murdock's right to proceed for failure to perform. In May 1975, Murdock declared bankruptcy.
 
 
 4
 Murdock challenged the termination of the ASROC contract before the ASBCA, alleging that the Navy had reformed the ASROC contract under PL 85-804, and that the Navy's breach of the reformulated contract both excused Murdock's failure to perform and harmed Murdock. The ASBCA denied Murdock's claim, ruling that the Navy's termination had been no breach because Murdock had defaulted on the contract. Appeal of Murdock Mach. & Eng'g Co. of Utah, 88-1 BCA p 20,354 (1987). Murdock appealed to the Circuit Court of Appeals for the Federal Circuit. Murdock Mach. & Eng'g Co. of Utah v. United States, 873 F.2d 1410 (Fed.Cir.1989). This court set aside the ASBCA default determination, holding that the contract had been reformed under PL 85-804, and that this new contract had been terminated for the convenience of the Navy. This court remanded the case to a contracting officer for determination of the damages suffered by Murdock as a result of the Navy's termination.
 
 
 5
 The contracting officer found that the Navy owed Murdock nothing. Instead, Murdock owed the Navy $3,129,258.34. Murdock appealed to the ASBCA, which set aside the decision of the contracting officer and sustained Murdock's appeal in the approximate amount of $4,000,000.00. The ASBCA remanded the case to the contracting officer with instructions for the final computation of the settlement amount. The Navy appeals the ASBCA decision to this court.
 
 DISCUSSION
 
 6
 After extensive evidentiary hearings, the ASBCA calculated the damage caused Murdock by the Navy's termination for convenience in accordance with the principles appropriate to cost-reimbursement contracts. We find a single error in the ASBCA determination, but otherwise, we affirm. In its opinion, the ASBCA noted that the proceeds from a V loan were used by Murdock to finance several defense contracts other than the ASROC contract. The ASBCA therefore held that Navy was entitled to "deduct only a pro rata share of the unpaid principle and interest, based on the launcher contract's share of the total value of the defense contracts financed by" the V loan. Appeal of Murdock Mach. & Eng. Co. of Utah, ASBCA No. 42,891, 93-1 BCA p 25,329 Sec. IV B (1992).
 
 
 7
 On the record, it is beyond question that the Navy's purpose in making the V loan available to Murdock was to give Murdock the capital necessary to perform the ASROC contract. The fact that some of the money from the V loan may have been used in a way that allowed Murdock to perform other defense contracts does not affect the issue. The Navy's entire financial exposure through its guarantee of the V loan was attributable to the ASROC contract, and should be considered an offset to the damages caused by the Navy's termination of that contract. The ASBCA should have offset the damages caused to Murdock by the Navy's termination of the ASROC contract with the total amount of financial support received by Murdock through the Navy's guarantee of the V loan. The decision of the ASBCA is therefore affirmed in part and reversed in part. This case is remanded with instructions to reform its determination accordingly. Each party shall bear its own costs.
 
 
 
 [1]
 Appeal of Murdock Mach. & Eng'g Co. of Utah, ASBCA No. 42,891, 93-1 BCA p 25,329 (1992) recon. denied 93-2 BCA p 25,887 (1993)
 
 
 [2]
 We have considered the Navy's several other arguments alleging error and find no merit in any of them
 
 
 [3]
 A V loan is a loan governed by the provisions of Regulation V of the Federal Reserve Board, 12 C.F.R. Sec. 245 (1992), and the contract financing section of Federal Acquisition Regulation. 48 C.F.R. Sec. 32.000 et seq. (1992), in particular 48 C.F.R. subpart 32.3, Loan Guarantees for Defense Production. V loan is there defined as "a loan, revolving credit fund, or other financial arrangement made pursuant to Regulation V of the Federal Reserve Board, under which the guaranteeing agency is obligated, on demand of the lender, to purchase a stated percentage of the loan and to share any losses in the amount of the guaranteed percentage." 48 C.F.R. Sec. 32.301 (1992)