**H.L. SMITH, INC., Appellant,**

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

No. 94–1318.

United States Court of Appeals, Federal Circuit.

March 7, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined June 1, 1995.

Alvin S. Nathanson, Nathanson & Goldberg, A Professional Corp., Boston, MA, argued for appellant.

Dean L. Grayson, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeeff, Asst. Director. Also on the brief was Alan Caramella, NAVFAC Litigation, Dept. of the Navy, of counsel.

Before RICH, NEWMAN, and RADER, Circuit Judges.

RADER, Circuit Judge.

H.L. Smith, Inc. submitted several requests for equitable adjustments and time

extensions under its Government contract. The contracting officer declined to issue final decisions on Smith's submissions. Smith appealed the deemed denials to the Armed Services Board of Contract Appeals. The Board dismissed for lack of jurisdiction. *H.L. Smith, Inc.*, 94–2 B.C.A. (CCH) ¶ 26,-723, 1994 WL 55629 (1994). Because Smith submitted proper claims under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988 & Supp. V 1993), the Board has jurisdiction over Smith's appeals. This court reverses and remands.

## BACKGROUND

In April 1991, Naval Facilities Engineering Command, Portsmouth Naval Shipyard awarded Smith Contract No. N62472–90–C–2029 to repair a bridge at Portsmouth Naval Shipyard in Kittery, Maine. Between June 1992 and April 1993, Smith submitted nine letters requesting equitable adjustments and time extensions on behalf of its subcontractor Grover Enterprises, Inc. Each submission included a letter from Grover under a cover letter. Each explained the circumstances warranting the alleged increased performance cost and time. The Board's decision accurately describes these letters. *Smith*, 94–2 B.C.A. (CCH) at 132,931–33.

Smith submitted the first two letters to the Navy in June 1992. Smith did not attach invoices, cost breakdowns, or other documentation explaining how it arrived at the sums requested. The contracting officer handling Smith's submissions replied that he did not consider Smith's letters to be valid claims under the disputes clause of the contract. *See* 48 C.F.R. § 52.233–1 (1994). Smith resubmitted its letters for final decision, adding certification language. The contracting officer then twice sought a more detailed factual submission to allow proper evaluation of Smith's requests. Smith did not respond with any specific cost-related documentation to support the requested amounts and time extensions.

In December 1992, and then in April 1993, Smith forwarded seven additional letters on behalf of Grover to the contracting officer, alleging that the Government caused delays. Smith again did not provide cost information to support the requested dollar amounts. Nor did Smith explain how it computed the requested amounts. In six separate letters, the contracting officer sought supporting financial documentation, but Smith and Grover did not respond. Receiving no invoices, cost breakdowns, or other supporting financial documentation from either Smith or Grover, despite repeated attempts, the contracting officer took no further action. He declined to make final decisions.

Smith appealed the contracting officer's inaction to the Board, asserting deemed denials under 41 U.S.C. § 605(c)(5) (1988). The Board dismissed Smith's appeals, without prejudice, for lack of jurisdiction. *Smith*, 94–2 B.C.A. (CCH) at 132,933. The Board held that absent information regarding calculation of the asserted amounts, the letters were not proper CDA claims. *Id.* Smith appeals.

## DISCUSSION

 This court reviews *de novo* the Board's dismissal of Smith's requests. 41 U.S.C. § 609(b) (1988); *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed.Cir.1992). Submission of a valid CDA claim is a jurisdictional prerequisite to appeal to the Board. *See W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338–39 (Fed. Cir.1983). The Board concluded that Smith's letters were not valid CDA claims because Smith did not substantiate the requested dollar amounts. Thus, this court must decide whether a contractor must submit invoices, detailed cost breakdowns, or other cost-related documentation to make a valid CDA claim.

 The CDA requires a Government contractor seeking redress to submit a written claim to a contracting officer for a final decision. 41 U.S.C. § 605(a) (1988). But, neither the CDA nor its implementing regulations, the Federal Acquisition Regulations (FAR), requires submission of a detailed cost breakdown or other specific cost-related documentation with the claim. The CDA does not define "claim," so this court looks for guidance to its implementing regulations. FAR § 33.201 defines a "claim" as

a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

48 C.F.R. § 33.201 (1994); _see also_ 48 C.F.R. § 52.233–1 (1994) (Government contract disputes clause defining CDA claim). Interpreting this definition, this court has identified three requirements for a valid CDA claim: (1) the contractor must submit the demand in writing to the contracting officer, (2) the contractor must submit the demand as a matter of right, and (3) the demand must include a sum certain. _Essex Electro Eng'rs, Inc. v. United States_, 960 F.2d 1576, 1580 (Fed.Cir.), _cert. denied_, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). The regulation itself, and this court's interpretation of it, do not mention supporting financial documentation.

A contractor must submit in writing "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." _Contract Cleaning Maintenance, Inc. v. United States_, 811 F.2d 586, 592 (Fed.Cir.1987). But the contractor need not include a detailed breakdown of costs. The contractor may supply adequate notice of the basis and amount of the claim without accounting for each cost component.

_Transamerica_ is on point. In that case, the contractor certified and submitted to the contracting officer its subcontractor's claim for an equitable adjustment. _Transamerica_, 973 F.2d at 1574–75. The claim stated a reason for the increased cost of performance—a defect in the roofing specifications—and included a request for an extension of time to accomplish the expanded scope of the work. _Id._ at 1574. The contracting officer requested supporting cost and pricing data. _Id._ at 1575. This court found compliance with the contracting officer's request unnecessary for a valid CDA claim:

[The contractor's] letter was in writing, was submitted to the contracting officer for a decision, requested payment of a sum certain, and gave the contracting officer adequate notice of the basis and the amount of the claim.

_Id._ at 1578. The contracting officer's desire for more information did not change the "claim" status of the contractor's letter.

Similarly, in _Tecom, Inc. v. United States_, 732 F.2d 935 (Fed.Cir.1984), this court held that a contractor's letter was sufficiently specific to satisfy the requirements for a "claim" under the CDA and Defense Acquisition Regulation ¶ 1–314(b)(1), a substantially identical predecessor to FAR § 33.201. _Id._ at 936–37.[1] The letter "first reiterated that [the contractor] viewed the newly demanded bus service as beyond the contract's requirements," and then specifically asked for "'compensation of $11,000.04 per year, to be billed at $917.67 per month.'" _Id._ at 937 (quoting letter). This court concluded that the letter contained "quite enough specificity for the claim, under both statute and regulation." _Id._ Although the contractor did not submit invoices and cost breakdowns, this court held that the contractor's letter made out a proper CDA claim.

 Smith's requests, like those in _Transamerica_ and _Tecom_, are valid CDA claims. The Board has jurisdiction over them. The Board, however, need not act immediately on Smith's appeals. By statute, the Board may stay Smith's appeals pending a final decision by the contracting officer:

Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter. However, in the event an appeal or suit is so commenced in the absence of a prior decision by a contracting officer, _the tribunal concerned may, at its option, stay the_

---

1. DAR ¶ 1–314(b)(1) defined a "claim" as

a written demand on one of the contracting parties seeking, as a matter of right, the payment of money, adjustment or interpretation of

contract terms, or other relief, arising under or related to the contract....

32 C.F.R. ¶ 1–314(b)(1) (1984).

*proceedings to obtain a decision on the claim by the contracting officer.*

41 U.S.C. § 605(c)(5) (1988) (emphasis added). Thus, the Board has two options. It may decide Smith's claims on the existing record. Alternatively it may stay Smith's claims pending a decision by the contracting officer. If the Board chooses to stay, it may direct the contracting officer to obtain additional information that would facilitate a decision.

The CDA envisions cooperation between the contracting officer and the contractor. It intends to facilitate resolution of contract disputes by negotiation rather than litigation. S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S.S.C.A.N. 5235. Contracting officers rightly expect cooperation. When Smith failed to respond to the contracting officer's requests for information and appealed directly to the Board, Smith simply delayed action on its claims.

### CONCLUSION

Invoices, detailed cost breakdowns, and other supporting financial documentation need not accompany a CDA claim as a jurisdictional prerequisite. The Board has jurisdiction over Smith's appeals, so this court reverses and remands.

### COSTS

Each party shall bear its own costs.

REVERSED AND REMANDED.