Anthony DREW (doing business as Centurion Electronics Services), Appellant,

v.

Les BROWNLEE, Acting Secretary of the Army, Appellee.

No. 03–1577.

United States Court of Appeals, Federal Circuit.

DECIDED: April 7, 2004.

Anthony Drew, Detroit, MI, pro se.

Andrew P. Averbach, Harold D. Lester, Jr., David M. Cohen, Washington, DC, for Appellee.

Before NEWMAN, RADER and DYK, Circuit Judges.

PER CURIAM.

Appellant, Anthony Drew ("Drew"), doing business as Centurion Electronics Services ("Centurion"),[1] appeals the decision of the Armed Services Board of Contract Appeals ("ASBCA" or "the Board") denying his claim for an equitable adjustment on his contract to supply repair services to the Department of the Army ("Army") and rejecting the contracting officer's award of a partial adjustment. *Centurion Elecs. Serv.*, ASBCA No. 51956, 03–1 B.C.A. (CCH) ¶ 32,097, 2002 WL 31741517 (2002), *reconsideration denied*, 03–2 B.C.A. ¶ 32,-262 (CCH), 2003 WL 21212826 (2003). We *affirm*.

## BACKGROUND

In June 1993 the Army awarded a contract for repair and maintenance of its Automated Data Processing ("ADP") equipment to a third party contractor. Centurion protested the award as inconsistent with the applicable evaluation criteria. A settlement agreement was reached under which the Army agreed to solicit bids for a new contract, and Centurion voluntarily dismissed its protest.

In October 1994 the Army, along with the Small Business Administration (collectively "the government"), entered into a contract ("the 1994 contract") with Centurion to provide "all per call repairs" of the Army's ADP equipment in the Fort Leavenworth area. *Centurion*, 03–1 B.C.A. (CCH) at 158,652. The contract estimated that Centurion would provide $80,000 in materials and 3,620 service hours per annum for the life of the contract. These estimates were based on the Army's past

billing of such services. The contract stated that the total value of these materials and services including the base year and four additional option years was $1,319,191.60.

In May 1995 the parties agreed to modify the 1994 contract because of the Army's lower-than-expected demand for Centurion's services.[2] This modification decreased the estimated materials costs to $29,992.10 and the expected number of service hours to 1,690. The last page of the May 1995 modification referred to Contract No. DABT19–94–D–0034 and SBA Subcontract No. 0709–94–2–0090, rather than the number of Centurion's 1994 contract. Neither Centurion nor Mr. Drew was a party to Contract No. DABT19–94–D–0034 or SBA Subcontract No. 0709–94–2–0090.

In September 1995 a second modification was made, apparently unilaterally by the government, which further reduced the estimated materials costs to $29,000 and the expected number of service hours to 1,005. Thereafter, the government exercised its option for the second year on the contract, but declined to exercise the final three option years. The total service hours that the government ordered during the life of the contract were 667.5 for the first year and 591.55 for the second.

On August 4, 1998, Mr. Drew submitted a certified claim ("the 1998 claim") to the contracting officer demanding $346,129.53 for "unused hours" under the contract. (App. at 37.) In a decision dated October 13, 1998, the contracting officer awarded Mr. Drew an adjustment of $80,736.12 for

---

1. Centurion, the name under which Mr. Drew conducts business, is not a separate corporation. Mr. Drew was the contracting party.

2. Originally, Mr. Drew argued that this was a unilateral modification by the government, but the ASBCA found that Mr. Drew agreed to

the May 1995 modification. *Centurion*, 03–1 B.C.A. (CCH) at 158,654–55. The appellant does not challenge this finding on appeal, and in any event the Board's finding is supported by substantial evidence.

the 1995 and 1996 fiscal years. Mr. Drew appealed the contracting officer's decision to the ASBCA on January 3, 1999, arguing that he was entitled to the full value of his 1998 claim. Subsequently, before the ASBCA made its decision, the contracting officer increased the adjustment by an additional $56,844.16. These monies were not released to Mr. Drew, but instead were held to partially offset debts Centurion owed to the Small Business Administration and the Internal Revenue Service.

In December 2002 the ASBCA reversed the contracting officer's award of the two adjustments because they were based solely on the contracting officer's determination that such adjustments were required by "equity." The ASBCA construed the contract to be a requirements contract based on Centurion's promise to provide "all per call repairs" and evidence that Centurion had failed in its attempt to negotiate a guaranteed minimum number of billable service hours. *Centurion,* 03–1 B.C.A. (CCH) at 158,658. The ASBCA found that although the Army's actual requirements were substantially less than the estimates, Mr. Drew was not entitled to damages because there was no showing that the estimates were negligently prepared or made in bad faith. *Id.* at 158,659. Accordingly, given its finding that the Army had discharged its obligation to order all ADP equipment repairs covered by the contract from Centurion, the ASBCA concluded that there was no legal basis for the adjustment awarded by the contracting officer.

The ASBCA also found that the reference to Contract No. DABT19–94–D–0034 and SBA Subcontract No. 0709–94–2–0090 in the May 1995 modification was merely a clerical error, and, although the government denied Mr. Drew's request for production of the mistakenly referenced documents, there was no need for the documents because Mr. Drew had admitted that he knowingly agreed to the modification. *Id.* at 158,655. The ASBCA further held that it lacked jurisdiction to hear the appellant's alternate ground for recovery (namely that a "verbal settlement agreement ... for a five-year, $1.25 million maintenance contract" was reached following the 1993 protest) because this claim was never made to the contracting officer. *Id.* at 158,657. Finally, the ASBCA held that it lacked the power to award extraordinary contractual relief under Public Law 85–804. *Id.* at 158,660.

On May 21, 2003, the ASBCA denied the appellant's motion for reconsideration of its 2002 decision. *Centurion,* 03–2 B.C.A. (CCH) ¶ 32,262. Mr. Drew timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review the ASBCA's conclusions of law without deference, but factual findings will be affirmed unless they are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence," 41 U.S.C. § 609(b). *Empire Energy Mgmt. Sys., Inc. v. Roche,* 362 F.3d 1343, 1350 (Fed. Cir.2004).

On appeal Mr. Drew first argues that the ASBCA erred in refusing to address his argument that the government breached an alleged verbal settlement agreement made following his 1993 protest. The 1998 claim submitted to the contracting officer does not raise this argument. Nor is there any other evidence to indicate that Mr. Drew raised this theory for recovery before the contracting officer. "[A] final decision by a [Contracting Officer] on a 'claim' is a prerequisite for Board jurisdiction." *Reflectone, Inc. v.*

*Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995) (*en banc*). Consequently, we affirm the ASBCA's decision that it lacked jurisdiction to hear this claim in the first instance.

■ The appellant further urges that the ABSCA failed to apply Public Law No. 85–804, 72 Stat. 972 (1958) (codified as amended at 50 U.S.C. §§ 1431–35 (2000)), apparently suggesting that the ASBCA should have converted his requirements contract to one for a fixed amount or guaranteed minimum number of service hours. The statute allows agencies "which exercise[ ] functions in connection with the national defense ... to enter into contracts or into amendments or modifications .... without regard to other provisions of law." 50 U.S.C. § 1431. However, the relief the appellant seeks under this section is committed to the agency's discretion, not the Board's. *See Murdock Mach. & Eng'g Co. of Utah v. United States,* 873 F.2d 1410, 1413 n. * (Fed.Cir.1989) ("Public Law 85–804 provides the agency unfettered discretion in considering requests for relief ...."); *see also Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966, 974–75 (1981) ("There is no question that Congress intended to exclude from the operation of the Contract Disputes Act the broadly discretionary settlement authority conferred by laws such as Public Law 85–804.") This is confirmed by the regulations adopted pursuant to Public Law 85–804, which make clear that a decision by the agency's contract adjustment board to take or to refrain from taking such extraordinary contractual modifications "shall not be subject to appeal." 48 C.F.R. § 50.202 (2003). Thus the ASBCA correctly held that it lacked the authority to grant relief under Public Law No. 85–804. *See Centurion,* 03–1 B.C.A. (CCH) at 158,660.

■ The appellant also argues that he was prejudiced because of the government's refusal to produce material evidence, apparently referring to the denial of his request for production of Contract No. DABT19–94–D–0034. *See id.* at 158,665. The ASBCA found that the reference to this contract number on the signature page of the first modification was a clerical error, and that Contract No. DABT19–94–D–0034 and SBA Subcontract No. 0709–94–2–0090 "had nothing to do with Centurion Electronics." *Id.* Mr. Drew does not dispute this finding and offers no reason why the denial of this request for production was prejudicial. We therefore reject this argument.

■ Finally, we reject the appellant's argument that the adverse financial impact he sustained from the contract modifications allegedly reducing the minimum number of required service hours warranted an adjustment of the 1994 contract. "To receive an equitable adjustment from the Government, a contractor must show three necessary element–liability, causation, and resultant injury." *Servidone Constr. Corp. v. United States,* 931 F.2d 860, 861 (Fed.Cir.1991). The ASBCA held that there was no liability because neither the 1994 contract, nor the subsequent modifications, required the Army to order a minimum number of service hours from Centurion. We perceive no error in this determination.

For the foregoing reasons we affirm the decision of the ASBCA denying the appeal and reversing the contracting officer's decision to grant a partial equitable adjustment.

## COSTS

No costs.