ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Tanik Construction Company, Inc. | ) | ASBCA No. 64203 |
| | ) | |
| Under Contract No. W911KB-14-D-0016 | ) | |

APPEARANCE FOR THE APPELLANT:        B. Neal Ainsworth, Jr., Esq.
                                       The Law Office of B. Neal Ainsworth
                                       Wasilla, AK

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
                                       Engineer Chief Trial Attorney
                                     Matthew J. Prieksat, Esq.
                                       Engineer Trial Attorney
                                       U.S. Army Engineer District, Alaska

OPINION BY ADMINISTRATIVE JUDGE PROUTY

Appellant, Tanik Construction Company, Inc. (Tanik), is before us a second time challenging the conduct of the Army Corps of Engineers (the Corps or the government) relating to the above-captioned contract (the contract). In its earlier appeal, ASBCA No. 62527, Tanik survived a motion for summary judgment premised upon the assertion that its dispute had been resolved by a signed release, *see Tanik Constr. Co.*, ASBCA No. 62527, 22-1 BCA ¶ 38,147 at 185,284 (*Tanik I*), and the parties ultimately settled the matter. The settlement, however, allowed Tanik to pursue a claim for "extraordinary contractual relief" that it had submitted to the Corps (the claim for extraordinary relief). The Corps did not grant the $4,390,543 demanded in this claim for, among other things, the destruction of Tanik's business and intentional infliction of emotional distress, and Tanik submitted the present appeal to the Board, which it referred to as an "Extra Contractual Lawsuit." The government has moved to dismiss the appeal as being outside the Board's jurisdiction. Indeed, as we explain below, the Corps is correct that an appeal of its failure to provide the "extraordinary relief" sought by Tanik is not within the Board's jurisdiction, and this case will be dismissed.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

I.  Preliminaries

The Corps awarded the contract to Tanik on April 9, 2014 (R4, tab 4 at COE 16-17[1]).  It was a multiple-award task order contract for performing sustainment, restoration, and modernization of various government facilities in Alaska (*id*. at COE 16).

A few months after the award of the contract, on September 25, 2014, the Corps awarded Task Order No. 0001 (the TO) to Tanik.  The TO was for apron[2] improvements at the Coast Guard Station, Kodiak, Alaska.  The amount of the TO was $5,738,047 (R4, tab 4 at COE 138-39).

During performance, an issue arose involving an alleged differing site condition.  The parties executed a number of bilateral change orders to address the matter and those change orders included releases of claims.  Tanik nevertheless submitted a certified claim to the contracting officer (CO) pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-09 (CDA), seeking additional damages.  The CO denied the claim on the basis that Tanik had released its claims.  *See Tanik I* at 185,280-82.

Tanik appealed the CO's decision to the Board and, as noted above, the Corps moved for summary judgment, arguing that the releases precluded further relief.  Tanik opposed the motion, and we denied it, finding that, under the standards applicable to motions for summary judgment, the affidavits submitted by Tanik in its opposition to the motion made out the elements of a fraud defense to the releases.  *See Tanik I* at 185,284.

II.  Tanik's Claim for Extraordinary Relief

Subsequent to our denial of the government's motion for summary judgment in *Tanik I*, the parties entered into settlement negotiations that ultimately bore fruit, leading to the execution of a settlement agreement and the dismissal of the appeal with prejudice.  *See Tanik Construction Co.*, ASBCA No. 62527, docket entry 83.  The parties' settlement agreement provided in relevant part that:

---

[1] The government-provided Rule 4 file is Bates numbered with the prefix "COE" appearing before a six-digit number that begins with zeroes.  Here, we delete the unnecessary zeroes.

[2] An apron is a hard surface on an airfield for maneuvering and parking aircraft.

> Upon execution of the Settlement, Tanik releases, waives, and abandons all claims against the United States, its political subdivisions, its officers, agents, and employees, arising out of or related to the Contract, whether known or unknown, regardless of whether they were included in the claim or the complaint, including but not limited to any claims for costs, interest, expenses, attorney fees under the Equal Access to Justice Act (EAJA) and damages of any sort, **with the exception of the issues described in the certified claim received by the Alaska District on September 19, 2023, requesting extraordinary contractual relief.**

Gov't motion to dismiss (MTD), Ex. 1, ¶ 3 (emphasis added).

The September 19, 2023 claim for extraordinary relief may be found at tab 62 of the Rule 4 file, and Tanik agrees that references to this claim all apply to this particular document (*see* app. supp. br. at 1). This document is eight pages long, and neither refers to nor invokes the CDA nor the Disputes clause of the Federal Acquisition Regulation (FAR), FAR 52.233-1 (*see* R4, tab 62).

The "subject" line of the document reads (in bolded font): "CERTIFIED CLAIM for EXTRAORDINARY CONTRACTURAL RELIEF IAW FAR 50.000 DFAR PART 250 FOR CONTRACT W911KB-14-D-0016, KODIAK APRON IMPROVEMENTS" (R4, tab 62 at COE 1029). We will discuss FAR 50.000 and the Department of Defense Supplement to the FAR (DFARS)[3] part 250 later in this decision, but note here that those regulations solely involve the availability under Public Law 85-804 of so-called "extraordinary" contractual relief.

The first page of the claim for extraordinary relief recounts the company's history, from its 2003 formation as a successful small business to the award of the contract here in 2014. It further avers that Tanik's signature on the contract modification that was the subject of the motion for summary judgment in Tanik's earlier appeal to the Board was obtained through "fraud" on the part of the Corps. (R4, tab 62 at COE 1029) Allegations of fraud and intentional infliction of emotional distress by the Corps and Corps employees are a recurring theme in the claim for extraordinary relief, appearing also in the second page of the document (*id*. at COE 1030 (alleging that the Corps officials were "in cahoots to commit fraud and destroy" Tanik, and also to inflict emotional distress on the company)); the third page of the

---

[3] Although Tanik's claim for extraordinary relief left the "S" off of DFARS, there is no "DFAR" regulation and we have no doubt that Tanik was referring to the DFARS.

3

document (*id.* at COE 1031 (referring to "missed opportunities" due to "intentional fraud" from the Corps "[n]ot to mention the intentional infliction of emotional distress" caused by the local Corps office)); and the seventh page of the document (*id.* at COE 1035 (alleging that "the Corps held firm to its fraudulent scheme" to destroy Tanik)).

While it disavowed that it was seeking punitive damages because they were unavailable, the claim for extraordinary relief sought damages for the destruction of the company and for "lost opportunities":

> The Army Corps of Engineers bears full and complete
> responsibility for the full amount of losses sustained by the
> actual destruction of Tanik but also the full responsibility
> of all lost opportunities.  The unfortunate facts are that the
> government does not play on the same moral and legal
> field as everyone else and its employees appear to have no
> requirement to obey the law.  If they did, clearly there
> would be punitive damages awarded.  But since punitive
> damages are outside the realm of any court or board to
> award, and the only remedy available is Extraordinary
> Contractual Relief, Tanik seeks Extraordinary Contractual
> Relief in the amount of $4,390,543.27.

(R4, tab 62 at COE 1030-31)

The $4,390,543.27 figure for damages is composed of $4,088,707.20 for "loss of contracts" and $301,836.07 for "loss of business assets."  The "loss of contracts" component purported to follow "the standard Eichleay formula" and to apply a derived home office overhead figure to value several years of the business.[4] (R4, tab 62 at COE 1031)

The last paragraph of the body of the claim for extraordinary relief began by insisting:  "In closing, based on the rules that apply to extraordinary contractual damages under FAR 50.000 subpart 50.1 and DFAR 250.1 my client is due the requested amount of $4,390,543.27."  (R4, tab 62 at COE 1035)  Again, Tanik argued that the Corps "held firm to its fraudulent scheme," which allegedly destroyed Tanik, and again it argued that it would have been entitled to punitive damages if the

---

[4] *Eichleay Corp.*, ASBCA No. 5183, 60-2 BCA ¶ 2,688, is known for articulating damages for the cost of home office overhead in delay cases.  It does not, as Tanik would have it, appear to have any logical connection to the value of lost contracts.  Nevertheless, we need not address that issue to decide the motion before us today.

government played by the same rules as private parties (*id.*).  We note that, although the claim for extraordinary relief made one assertion of "bad faith" in the context of the protracted litigation of this matter by the Corps (*see id.* at COE 1030), it did not explicitly assert a violation of the contractual duty of good faith and fair dealing (*see id. generally*).

The document ended with the line, "Certified Claim Amount due for the direct and total destruction of business = \$4,390,542.27," which was followed by language identical to the CDA claim certification language found in FAR 33.207(c) and signed by Tanik's counsel (R4, tab 62 at COE 1036).

### III.  Post-Claim Actions

There is no evidence in the record of a decision by anybody in the Corps in response to the claim for extraordinary relief, nor is there any allegation that there was any response made by the Corps to Tanik.  On June 15, 2025, Tanik submitted its notice of appeal to the Board by sending its complaint to the Board's Recorder's Office.  The email from Tanik's counsel forwarding the complaint read, in its entirety: "Good evening, Please see the attached Extra Contractual Lawsuit.  Thank you," which was followed by Tanik's counsel's signature block (*Tanik Construction Co.*, ASBCA No. 64203, docket entry 1).

### DECISION

The Corps has moved to dismiss this appeal based on the related notions that claims for extraordinary contractual relief brought under FAR Part 50 and under the authority of Public Law 85-804 are not subject to appeal and that the "contract adjustment" sought by Tanik is a remedy the Board cannot provide (*see* MTD at 1-3).  Tanik's response completely fails to engage with the government's motion, does not mention Public Law 85-804 or FAR Part 50, and instead characterizes its appeal as one regarding "the destruction of [a] business."  (MTD opp. generally and at 1).  The government's reply brief underscored that Tanik's claim for extraordinary relief was, in fact, a claim for extraordinary relief brought pursuant to Public Law 85-804 and FAR part 50, and that Tanik's response reflects a dramatic change in the theory of recovery from what it earlier pursued (*see* MTD reply generally).

When this appeal was assigned to the undersigned, he issued an order requiring additional briefing from Tanik, seeking confirmation that the claim at issue in this appeal was the eight-page claim for extraordinary relief identified earlier in this decision and inquiring whether the claim was intended to be submitted pursuant to FAR Part 50 and DFARS part 250 or if there were any reason to believe that it was not (*see* Order dated February 19, 2026).  In response, Tanik agreed that the document identified in the order was the correct one but disclaimed any intent to be limited to a

purely "discretionary" agency contract adjustment (app. supp. br. at 1). Instead, Tanik argued, it was advancing conventional contract claims, including breach of the duty of good faith and fair dealing; fraud in the inducement of the contract; failure to make a timely payment of the contract; and "failure to issue a decision." (*Id*. at 2-3).

For reasons to be discussed in greater detail below, we agree with the government and find that Tanik's claim for extraordinary relief is exactly what it asserted itself to be when it was submitted to the Corps and later appealed to the Board, but before the government moved to dismiss it: a document seeking extraordinary relief pursuant to regulations citing only Public Law 85-804. As such, we do not possess jurisdiction to consider this appeal.

## I. The Burden of Proof is on Tanik to Establish our Jurisdiction

Tanik's opposition to the government's motion to dismiss seems to advance the argument that the motion should be treated as one for summary judgment and that there should be notice of such consideration. But Tanik does not ever say this directly, nor does it explain why the motion to dismiss is not what it says it is. (*See* MTD opp. at 3). Although it does appear to us that the government may have a basis to advance a motion for summary judgment (an argument based upon the waiver contained in the settlement agreement), the government does not make that argument here and we do not consider it. Rather, the question presented today is squarely jurisdictional: whether Tanik's claim for extraordinary relief falls within the ambit of the CDA.

In any event, once jurisdiction has been challenged, the burden lies with the appellant to establish it through a preponderance of the evidence. *See, e.g., BCC-UIProjects-ZAAZTC Team JV*, ASBCA No. 62846, 22-1 BCA ¶ 38,119 at 185,171 (citations omitted); *Tetra Tech EC, Inc*., ASBCA Nos. 62449, 62450, 21-1 BCA ¶ 37,900 at 184,054 (citations omitted); *see also Gen. Mills, Inc. v. United States*, 957 F.3d 1275, 1284 (Fed. Cir. 2020); *Reynolds v. Army Air Force Exch. Serv*., 846 F.2d 746, 748 (Fed. Cir. 1988). We accept as true all undisputed facts in the complaint and draw all reasonable inferences in favor of the non-moving party. *Estes Exp. Lines. v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). We may also "inquire into jurisdictional facts" where there is a dispute. *Gen. Mills*, 957 F.3d at 1284 (citing *Rocovich v. United States*, 933 F.2d 991, 933 (Fed. Cir. 1991)). Thus, when necessary, we may engage in fact-finding based on our review of the record. *See CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816 (citing *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,016). Here, of course, the primary document in the record for our purposes is the claim for extraordinary relief.

II. The Claim for Extraordinary Relief is Exactly What it Purports to be:  A Request for Relief Under Public Law 85-804

It is hard to argue against characterizing the claim for extraordinary relief in the way that it characterized itself.  The title, in bold, all-caps lettering states that it is a claim "for EXTRAORDINARY CONTRACTURAL RELIEF IAW FAR 50.000 DFAR PART 250."  (R4, tab 62 at COE 1029)  Moreover, the last paragraph of the claim for extraordinary relief begins by asserting that Tanik's demand for relief is "based on the rules that apply to extraordinary contractual damages under FAR 50.000 subpart 50.1 and DFAR 250.1."  (*Id.* at 1035)  As noted above, those regulations solely invoke Public Law 85-804.

FAR 50.000, Scope of Part (February 17, 2009), the portion cited in the subject line of Tanik's claim for extraordinary relief, provides in relevant part that:

> This part –
>
> (a)(1) Prescribes policies and procedures for entering into, amending, or modifying contracts in order to facilitate the national defense under the extraordinary emergency authority granted by Public Law 85-804 (50 U.S.C. 1431-1434) and Executive Order 10789, dated November 14, 1958 . . .

FAR Subpart 50.1, Extraordinary Contractual Actions (the authority cited by Tanik in its demand for relief), and its sections, provide more detail about the means to utilize the authority provided by Public Law 85-804.  Notably, section 50.101-1, Authority, is exclusively about powers conferred upon the President by Public Law 85-804, which allows entering into, amending, or modifying contracts, "whenever the President considers that such action would facilitate the national defense." FAR 50.101-1(a).

The other regulatory authority cited by Tanik in its claim for extraordinary relief, DFARS 250.1, Extraordinary Contractual Actions,[5] sets forth the procedures to be utilized within the Department of Defense for addressing requests for extraordinary contractual relief in accordance with FAR Part 50 and Public Law 85-804.  It contemplates the establishment of contract adjustment boards by the individual military services, to which contractor requests for relief will be forwarded for decision after they are submitted to the procuring contracting officer.  *See* DFARS

---

[5] The subject line of Tanik's claim for extraordinary relief references DFARS Part 250, not 250.1, which it cites in its demand for relief.  But DFARS Part 250 has only one subpart: 250.1.

250.102-2, CONTRACT ADJUSTMENT BOARDS; DFARS 250.103-3, CONTRACT ADJUSTMENT; DFARS 250.103-5, PROCESSING CASES.[6]

Nothing in the text of the claim for extraordinary relief refers to the CDA,[7] and the only reasonable way to read this document, which purports to be seeking extraordinary contractual relief through FAR Part 50 and DFARS Part 250.1, is that it is seeking relief through a contract adjustment board pursuant to Public Law 85-804 as provided in those regulatory sections, and not through a CDA claim.

Indeed, the two types of requests for relief (i.e., extraordinary contractual relief and a CDA claim) are mutually exclusive. As the version of the FAR in place at the time the claim for extraordinary relief was submitted,[8] explains in Part 33.205, RELATIONSHIP OF THE ACT TO PUBLIC LAW 85-804:

> (a) Requests for relief under Public Law 85-804 . . . are not claims within the Contract Disputes Act of 1978 or the Disputes clause at 52.233-1, Disputes, and shall be processed under Subpart 50.1, Extraordinary Contractual Actions.

This explication by the FAR is particularly salient because the FAR's guidance is used to define a CDA claim.[9] *See, e.g., H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995).

Thus, we conclude that we do not have the appeal of a CDA claim before us, but one involving a request for relief under Public Law 85-804, which is a fact that

---

[6] We are not a "contract adjustment board" as that term is used in DFARS 250.1.

[7] To be sure, Tanik included claim certification language in the claim for extraordinary relief, but it did not identify this language as being provided pursuant to the CDA, and it has never argued that this language should have any bearing upon our understanding of the claim for extraordinary relief.

[8] Effective March 13, 2026, this portion of the FAR was amended to replace "Contract Disputes Act of 1978" with "Disputes statute." The "Disputes statute" is just another term for the CDA. *See* FAR 33.202 (referencing 41 U.S.C. chapter 71).

[9] The definition of a CDA claim by the FAR provides support for the holding by the Federal Circuit that a document labeled as a request for equitable adjustment can also be considered a CDA claim. *See, e.g., Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (en banc). But no FAR provision prohibits an REA from also being a CDA claim the way that FAR 33.205 affirmatively states that requests for relief under Public Law 85-804 are not CDA claims.

Tanik appeared to recognize (if not appreciate the gravity of) when it submitted its complaint to the Board and characterized it as an "extra-contractual lawsuit."[10]

### III. We do not Possess Jurisdiction Over Claims for Extraordinary Relief

Without the submission of a valid CDA claim, we do not possess jurisdiction to consider Tanik's appeal. *See, e.g., H.L. Smith* 49 F.3d at 1564; 41 U.S.C. §§ 7103, 7104. Moreover, we may not review requests for relief pursuant to Public Law 85-804.

Public Law 85-804 was passed in 1958 and is one of a line of laws stretching back to the beginning of World War II authorizing defense agencies "to grant discretionary relief to contractors suffering losses on account of mistakes . . . The underpinning for the granting of relief must be a finding that such action would facilitate the national defense or prosecution of the war." *Evans Reamer & Mach. Co. v. United States*, 386 F.2d 873, 878 n.8 (Ct. Cl. 1967). As such, it is well-settled that "any action or decision by an agency under Public Law No. 85-804 is within the exclusive discretion of the executive branch of the government and is not subject to judicial review." *Coastal Corp. v. United States*, 713 F.2d 728, 731 (Fed. Cir. 1983) (citing *Winder Aircraft Co. of Fla. v. United States*, 412 F.2d 1270 (Ct. Cl. 1969); *Evans Reamer & Mach.*, 386 F.2d 878 n.8; *Bolinders Co. v. United States*, 153 F.Supp. 381 (Ct. Cl. 1957) (predecessor statute)). Thus, in *Murdock. Mach. & Eng'g Co. of Utah v. United States*, 873 F.2d 1410 (Fed. Cir. 1989), the Federal Circuit described Public Law 85-804 as providing "the agency unfettered discretion in considering requests for relief..." 873 F.2d at 1413 n.1 (citations omitted). Accordingly, we do not possess jurisdiction to consider this appeal.

---

[10] This characterization is also consistent with the fact that Tanik's claim for extraordinary relief leans heavily into the alleged aspects of the Corps' actions that would be tortious, while the CDA does not confer jurisdiction upon us to hear claims that sound in tort. *See, e.g., E.M. Scott & Assocs., Inc.*, ASBCA No. 45869, 94-1 BCA ¶ 26,258 at 130,602 (citations omitted). By contrast, subsection (a)(2) of FAR 50.103-2, TYPES OF CONTRACT ADJUSTMENT, does provide Contract Adjustment Boards the discretionary authority under FAR part 50 to make appropriate adjustments "in the interest of fairness."

<u>CONCLUSION</u>

Regardless of how Tanik seeks to reframe it now, its claim for extraordinary contractual relief, relying on FAR Part 50 and DFARS 250.1, is a request for extraordinary contractual relief under Public Law 85-804 and is not a CDA claim. As such, we do not possess jurisdiction to consider it, and this appeal is dismissed.

Dated: May 26, 2026

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

THOMAS P. MCLISH
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 64203, Appeal of Tanik Construction Company, Inc., rendered in conformance with the Board's Charter.

Dated: May 26, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

10