# United States Court of Appeals for the Federal Circuit

---

**GENERAL MILLS, INC. AND SUBSIDIARIES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-1124

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00089-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: April 23, 2020

---

SHERI DILLON, Morgan, Lewis & Bockius LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JENNIFER BREEN, WILLIAM NELSON, JAMES GASTON STEELE, III.

JULIE CIAMPORCERO AVETTA, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ARTHUR THOMAS CATTERALL, RICHARD E. ZUCKERMAN.

---

Before NEWMAN, MOORE, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CHEN.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

CHEN, *Circuit Judge.*

General Mills, Inc. & Subsidiaries (collectively, GMI) sued the United States seeking refunds of interest it paid on corporate income tax underpayments that the Internal Revenue Service (IRS) assessed at the enhanced rate of interest for "large corporate underpayments" (LCU) set forth in Internal Revenue Code (I.R.C.) § 6621(c).  GMI is the parent corporation of a number of partners of General Mills Cereals, LLC, a limited liability company that is treated as a partnership for tax purposes (the Partnership).  GMI alleges that after certain partnership-level audits of the Partnership's returns for the 2002–2006 tax years were settled with the IRS, the IRS erroneously collected $5,958,695 in LCU interest by selecting incorrect "applicable dates" to start interest accrual.  GMI paid the LCU interest in April 2011, and, in March 2013, filed administrative refund claims with the IRS.  After the IRS denied the claims, GMI initiated the underlying refund suit in the United States Court of Federal Claims.  The court dismissed GMI's suit for lack of subject matter jurisdiction, concluding that GMI was required, but failed, to file its administrative refund claims with the IRS within the six-month limitations period set forth in I.R.C. § 6230(c).  *General Mills, Inc. v. United States*, 123 Fed. Cl. 576 (2015).

GMI contends that the general two-year tax refund claim limitations period under I.R.C. § 6511(a) should apply to its administrative refund claims, instead of the special six-month limitations period described in § 6230(c).  Section 6230(c) provides that "[a] partner may file a claim for refund on the grounds that . . . the [IRS] erroneously computed any computational adjustment necessary . . . to apply to the partner a settlement."  § 6230(c)(1)(A)(ii).

Section 6230(c) further provides that any such claim "shall be filed within 6 months after the day on which the [IRS] mails the notice of computational adjustment to the partner." § 6230(c)(2)(A).  Because we agree with the Court of Federal Claims that the basis of GMI's refund claims is that the IRS erroneously computed a computational adjustment resulting from a settlement by allegedly miscalculating the amount of LCU interest due, GMI's refund claims are subject to the six-month limitations period.  Since GMI received adequate notice of the computational adjustment, and yet, filed its refund claims well outside the six-month period, we affirm the dismissal.

## BACKGROUND

### A.  TEFRA'S STATUTORY FRAMEWORK

This appeal concerns determining the applicable statute of limitations for GMI's administrative refund claims—the six-month limitations period under § 6230(c) or the general two-year limitations period under § 6511(a)—and then determining whether that limitations period began to run when the IRS provided GMI with certain notices of the amounts of LCU interest it owed.  Before turning to the facts, we undertake a brief review of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), generally codified at I.R.C. §§ 6221–34, and its effect on the IRS's auditing of partnerships.

A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to its partners.  I.R.C. § 701.  A partnership must report its tax items on an information return, I.R.C. § 6031(a), and the partners must report their distributive shares of the partnership's tax items on their own individual returns, I.R.C. §§ 702, 704. TEFRA comes into play when the IRS reviews a partnership's information return and disputes some aspect of it.  *Bush v. United States*, 655 F.3d 1323, 1324–25 (Fed. Cir. 2011).

"Partnership items" are items whose treatment affects the entire partnership such as the partnership's income, gain, loss, or credit, and so analyzing them at the partnership level makes more sense than doing so partner-by-partner. *See* § 6231(a)(3) (defining "partnership item"); Treas. Reg. §§ 301.6231(a)(3)–1(a), 1(b). Prior to the 1982 enactment of TEFRA, the Internal Revenue Code treated partnership items at the individual partner level. Adjustments to the tax treatment of partnership items had to be determined in separate proceedings involving each individual partner. *Olson v. United States*, 172 F.3d 1311, 1316 (Fed. Cir. 1999). If a partnership had numerous partners located throughout the country, the piecemeal nature of the individual partner-level determinations sometimes resulted in inconsistent treatment of the same items between different partners and in duplication of administrative and judicial resources. *Id.*; *Bassing v. United States*, 563 F.3d 1280, 1282 (Fed. Cir. 2009); *see also RJT Investments X v. Comm'r*, 491 F.3d 732, 737 (8th Cir. 2007) ("TEFRA was intended . . . to prevent inconsistent and inequitable income tax treatment between various partners of the same partnership resulting from conflicting determinations of partnership level items in individual partner proceedings.").

Consequently, TEFRA was enacted in order to streamline the tax audit, assessment, and litigation procedures for partnerships. *Bush*, 655 F.3d at 1325. Rather than undertake an arduous series of partner-by-partner audits, as had previously been required, TEFRA allows for a single, unified partnership-level procedure for auditing and litigating partnership items, thus addressing concerns about inconsistent treatment of the same partnership items across partners. *Id.*; *Stobie Creek Investments LLC v. United States*, 608 F.3d 1366, 1374 (Fed. Cir. 2010).

Partnership-related matters are addressed in two stages under TEFRA: partnership level and then individual partner level. *United States v. Woods*, 571 U.S. 31, 39

(2013). During the first stage, the IRS initiates a partnership-level proceeding to adjust partnership items reported on the partnership's information return. *Id.*; § 6221. Each partner has the right to participate in the IRS's audit of the partnership's information return. *Olson*, 172 F.3d at 1317; *see* § 6224(a). A partner may waive this right and opt out of the partnership-level proceeding by entering into a binding settlement agreement with the IRS. *Olson*, 172 F.3d at 1317; *see* §§ 6224(b), (c). Upon completion of the partnership-level proceeding, the IRS is required to mail to certain partners a copy of the resulting final partnership administrative adjustment, which notifies the partners of any adjustments to partnership items. *Olson*, 172 F.3d at 1317; *see* § 6223.

During the second stage, the results of the partnership-level proceeding are applied to the individual partners. In the partner-level proceeding, the IRS makes "computational adjustments" to each partner's return to reflect the adjustments to partnership items. *See* § 6231(a)(6) (defining "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item").

The partner-level proceedings subsequently follow one of two procedures: direct assessment or deficiency procedure. *Thompson v. Comm'r*, 729 F.3d 869, 871 (8th Cir. 2013). Most computational adjustments are directly assessed against the partners. *Woods*, 571 U.S. at 39. If the IRS's calculation is purely computational, the IRS directly assesses the computational adjustment and issues to the partner a notice of computational adjustment. *Chai v. Comm'r*, 851 F.3d 190, 196 (2d Cir. 2017). For direct assessments, the partners are permitted to challenge any error in the computational adjustments *only* in post-payment refund actions. *Woods*, 571 U.S. at 39; *see* §§ 6230(a)(1), (c). TEFRA added the provisions providing for direct assessment in order "to increase efficiency when the IRS audits

partnership returns that may affect a large number of individual taxpayers." *Bush*, 655 F.3d at 1328; *see* § 6230(a).

The "standard" deficiency procedures are still required for certain computational adjustments that require a factual determination at the partner level, such as, for example, a determination of negligence by the partner. *Olson*, 172 F.3d at 1317; *see* § 6230(a)(2)(A)(i). The deficiency procedures, set forth in I.R.C. §§ 6211–16, require the IRS to issue a pre-assessment notice of deficiency to each taxpayer, § 6212(a), who can file a petition in the Tax Court disputing the alleged deficiency before paying it, § 6213(a). *Woods*, 571 U.S. at 38.

For those computational adjustments that are directly assessed against them, the partners may challenge any error in the computational adjustments by filing administrative refund claims with the IRS. *See* §§ 6230(a)(1), (c). For certain types of these administrative refund claims, § 6230(c) requires the taxpayer to "file[] within 6 months after the day on which the Secretary mails notice of computational adjustment to the partner." § 6230(c)(2)(A).[1] With this legal framework in mind, we turn to the facts.

---

[1]    In the Bipartisan Budget Act of 2015, Congress amended the TEFRA procedures and struck § 6230(c)(2)(A), the provision that set forth the six-month limitations period. Pub. L. No. 114–74, § 1101, 129 Stat. 584, 625. The Bipartisan Budget Act reformed the partnership auditing procedures such that, in addition to making adjustments to partnership items at the partnership level, any additional tax liability resulting from those adjustments are assessed and collected from the partnership at the partnership level, rather than from the individual partners in the partner-level proceedings. *BASR P'ship v. United States*, 915 F.3d 771, 775 n.6 (Fed. Cir. 2019). The Bipartisan Budget Act is effective only for partnership tax

## B. FACTS

GMI seeks a refund of interest the IRS assessed on large corporate underpayments[2] of corporate income tax for the 2002–2006 tax years. The interest rate applied to large corporate underpayments is not the interest rate typically applied to an underpayment of tax,[3] but instead is two percent higher than the default underpayment rate. *See* § 6621(c). The enhanced interest rate on large corporate underpayments applies, however, only to periods after the "applicable date" and only after the IRS satisfies certain notice requirements as specified in § 6621(c). Treas. Reg. § 301.6621–3(c)(1). At the Court of Federal Claims, GMI alleged that the IRS miscalculated the amount of LCU interest owed by using incorrect applicable dates to start the accrual of LCU interest for the relevant tax years. The court never reached that merits question because it agreed with the Government that GMI failed to file its administrative refund claims with the IRS within the six-month limitations period established by § 6230(c).

### 1. THE 2002 AND 2003 TAX YEARS

------

years beginning after December 31, 2017. *See* Bipartisan Budget Act of 2015 § 1101, 129 Stat. at 638. Because this case concerns the 2002–2006 tax years, the previous TEFRA provisions apply, including § 6230(c)(2)(A). Our holding today is limited to interpreting the TEFRA provisions as they existed before the amendment.

[2]    The term "large corporate underpayment" means "any underpayment of a tax by a C corporation for any taxable period if the amount of such underpayment for such period exceeds $100,000." § 6621(c)(3)(A).

[3]    Interest on underpayments of tax is generally imposed at the default underpayment rate of the federal short-term rate plus three percentage points. I.R.C. §§ 6601(a), 6621(a)(2).

GMI timely filed its corporate income tax returns for the 2002 and 2003 tax years, and the Partnership timely filed partnership income tax returns for those years as well. The partners of the Partnership are subsidiaries of the GMI corporate entity.[4] In January 2005, the IRS commenced a TEFRA audit of the Partnership's 2002 and 2003 tax returns, and in April 2005, the IRS commenced an audit of GMI's 2002 and 2003 corporate tax returns using deficiency procedures.

On June 15, 2007, after completing the audit of GMI's 2002 and 2003 corporate tax returns, the IRS mailed a 30-day letter to GMI with an enclosed "examination report" showing the results of the corporate tax audit and "proposed changes to [GMI's] tax[es]." J.A. 178. The 30-day letter identified tax deficiencies of more than $143 million for 2002 and of nearly $93 million for 2003. The letter explained the conditions under which LCU interest would be imposed: "If you are a 'C' Corporation, Section 6621(c) of the Internal Revenue Code provides that an interest rate 2% higher than the standard rate of interest will be charged on deficiencies of $100,000 or more." It also stated: "If you pay the full amount due now, you will limit the amount of interest and penalties charged to your account."

As for the related TEFRA partnership proceeding for the 2002 and 2003 tax years, the partners entered into settlement agreements with the IRS in July 2010. The Partnership settlement agreements resulted in adjustments to partnership items reported on the Partnership's 2002 and 2003 tax returns. The partners and the IRS executed a Form 870-LT(AD), "Settlement Agreement for Partnership Items and Partnership Level Determinations as to

---

[4]    The partners include, *inter alia*, General Mills Operations, Inc., GM Cereals Holdings, Inc., GM Cereals Operations, Inc., and the Pillsbury Company. J.A. 257, 262, 272, 287.

Penalties, Additions to Tax and Additional Amounts and Agreement for Affected Items." The Form 870-LT(AD) shows that the Partnership settlement agreements contemplated an assessment of "any interest provided by law." J.A. 257–58, 262–63, 267–68, 272–73, 278–79, 287–88, 296–97, 305–06, 314–15, 323–24.

On August 27, 2010, the IRS mailed a Form 5278 ("Statement – Income Tax Changes"), informing GMI of how the adjustments to partnership items resulting from the Partnership settlement agreements had increased GMI's 2002–2003 corporate income tax liabilities beyond the deficiencies the IRS identified in the above-described 30-day letter from June 15, 2007. The accompanying cover letter stated, "[t]he enclosed audit statement explains how the adjustments made during our examination of General Mills Cereal, LLC affect your income tax return." J.A. 332. The Form 5278 reflected additional underpayments by GMI of about $16 million for 2002 and more than $33 million for 2003. J.A. 333. The cover letter advised GMI that the IRS "will adjust your account and figure the interest . . . [and] will send a bill for any additional amount you owe." J.A. 332. One week later, the IRS assessed against GMI the identified tax deficiencies plus interest, which included LCU interest. J.A. 186, 197.

On April 11, 2011, GMI made payments of tax and interest to the IRS sufficient to eliminate its account balances with respect to the 2002 and 2003 tax years. J.A. 187, 344, 199, 338. On April 18, 2011 and April 20, 2011, the IRS mailed detailed interest computation schedules to GMI for the 2002 and 2003 tax years. J.A. 334–38, 342–44. The accompanying cover letters stated the interest computation schedules were used by the IRS to "calculate interest on the tax adjustment for the [2002 and 2003] return[s]." J.A. 334, 342.

The interest computation schedules informed GMI that for the 2002–2003 tax years, the IRS treated July 15, 2007

as the "applicable date" for imposing LCU interest. J.A. 335, 337. July 15, 2007 was the thirtieth day after the 30-day letter was issued on June 15, 2007. As required by statute, the "applicable date" for LCU interest to begin accruing is determined "by taking into account any letter or notice provided by the [IRS] which notifies the taxpayer" of the assessment (or the proposed assessment) of the tax or of the deficiency (or the proposed deficiency). *See* §§ 6621(c)(2)(A), (c)(2)(B)(i). The taxpayer has thirty days after notice to pay the large corporate underpayment before the enhanced interest rate will apply. *Id.*

GMI acknowledges that it owed some amount of LCU interest, but disputes when the LCU interest should have begun to accrue. GMI claims that September 26, 2010— and not July 15, 2007—was the correct applicable date, because, in its view, it did not receive proper notice from the IRS before then. *See* Treas. Reg. § 301.6621–3(c)(1). September 26, 2010 was the thirtieth day after the IRS issued the Form 5278 on August 27, 2010 which, according to GMI, represented "the first notice it received upon the conclusion of the partnership proceedings that notified GMI of an assessment of tax attributable to partnership items." *General Mills,* 123 Fed. Cl. at 581. In GMI's view, the IRS incorrectly applied § 6621(c)(2)(A) for determining the applicable date, when it should have instead applied § 6621(c)(2)(B)(i).[5] Appellant's Br. at 4–5.

---

[5] Section 6621(c)(2)(A) provides for the applicable date for any underpayment of a tax to which the deficiency procedures apply. In such circumstances, the applicable date is the thirtieth day after the earlier of the date on which the IRS sends a "letter of proposed deficiency" (30-day letter) or a "deficiency notice." § 6621(c)(2)(A); Treas. Reg. § 301.6621–3(c)(2). On the other hand, § 6621(c)(2)(B)(i) supplies the applicable date for any underpayment of a tax to which nondeficiency procedures

## 2. THE 2004, 2005, AND 2006 TAX YEARS

GMI timely filed its corporate income tax returns for the 2004, 2005, and 2006 tax years. The Partnership timely filed its partnership income tax returns for those years as well. In September 2007, the IRS began auditing GMI's 2004–2006 corporate tax returns. In November 2007, the IRS notified the Partnership that it would initiate a TEFRA proceeding with respect to the Partnership's 2004–2006 tax returns.

On April 29, 2009, the IRS sent a 30-day letter to GMI showing the results of the corporate tax audit for 2004–2006 and enclosing an "examination report showing proposed changes to [GMI's] tax[es]." J.A. 345. The 30-day letter identified tax deficiencies of more than $30 million for 2004, $347 million for 2005, and $58 million for 2006. J.A. 347. As was the case with the 30-day letter relating to 2002–2003, the letter for 2004–2006 informed GMI of the enhanced interest rate imposed on large corporate underpayments and advised GMI that "pay[ing] the full amount due now . . . will limit the amount of interest and penalties." J.A. 347.

As for the TEFRA partnership proceeding, in November 2010, the partners entered into settlement agreements with the IRS, as reflected in executed Form 870-LT(AD). The settlement agreement Form 870-LT(AD) contemplated an assessment of "any interest provided by law." J.A. 380–81, 388–89, 398–99, 408–09, 418–19, 428–29, 438–39, 448–49, 458–59, 468–69. The Partnership settlement agreements resulted in TEFRA adjustments to certain partnership items that increased GMI's corporate tax liabilities for the 2004–2006 tax years.

---

apply. There, the applicable date is thirty days after the IRS "notifies the taxpayer of the assessment or proposed assessment of the tax." § 6621(c)(2)(B)(i).

On March 4, 2011, the IRS sent GMI a second 30-day letter along with multiple computational documents showing the impact of the TEFRA adjustments on GMI's corporate tax liabilities for 2004–2006. J.A. 478–558. The second 30-day letter also enclosed a Form 870, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," which GMI's representative later signed. The executed Form 870 stated that GMI "consent[s] to the immediate assessment and collection of any deficiencies (increase in tax and penalties) . . . shown [herein], plus any interest provided by law." J.A. 480. The computational documents showed that the IRS computed underpayments in tax for GMI's 2004, 2005, and 2006 tax years of, respectively, more than $19 million, more than $9 million, and about $52 million. J.A. 480, 483. As with the earlier 30-day letters, the letter informed GMI that the IRS would impose an enhanced interest rate on large corporate underpayments. J.A. 478. On April 11, 2011, GMI paid these amounts together with designated interest, including LCU interest. J.A. 207, 217, 226.

Thereafter, on June 14, 2011, the IRS provided GMI with the interest computation schedules that it had used to compute the amount of interest due, including the amount of LCU interest due, on GMI's tax underpayments for 2004–2006. J.A. 559–63. The interest computation schedules informed GMI that the IRS had applied an applicable date of May 29, 2009 for beginning the accrual of LCU interest. May 29, 2009 was the thirtieth day after the IRS issued the first 30-day letter on April 29, 2009. *See* § 6621(c)(2).

As with the 2002–2003 tax years, GMI claims the IRS used the incorrect applicable date to compute the amount of LCU interest due for the 2004–2006 tax years. GMI argues that the correct applicable date should have been April 3, 2011, i.e., the thirtieth day after the second 30-day letter dated March 4, 2011 and additional computational documents showing the impact of the Partnership

settlement agreements.  As with GMI's claims relating to the 2002–2003 tax years, GMI believes the IRS erroneously applied § 6621(c)(2)(A), when it should have applied § 6621(c)(2)(B)(i), to determine the applicable date.

### C. PROCEEDINGS BELOW

GMI did not file administrative claims with the IRS for refund of the paid LCU interest until March 28, 2013, which was more than six months after the IRS notified GMI of its obligations respecting LCU interest.  After the IRS denied GMI's administrative refund claims, GMI brought this refund suit in the Court of Federal Claims. The Government moved to dismiss GMI's complaint for lack of subject matter jurisdiction, arguing that GMI failed to file its administrative refund claims within the six-month limitations period under § 6230(c).  GMI responded that its request for refund was timely because, in its view, the tax code's general two-year statute of limitations applied to its administrative refund claims.  *See* § 6511(a).

Before a tax refund claim can be considered by a court, it must be filed with the IRS within applicable statutory time limitations.  *See* I.R.C. § 7422(a) (barring suit for the refund of taxes unless and until an administrative refund claim that complies with statutory and regulatory requirements "has been duly filed with the [IRS]"); *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 5 (2008) ("Read together, the import of [I.R.C. § 7422(a) and § 6511(a)] is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court.") (quoting *United States v. Dalm*, 494 U.S. 596, 602 (1990)). We have held that a taxpayer's failure to file a timely refund claim with the IRS deprives the trial court of subject

matter jurisdiction.[6]  *Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1206 (Fed. Cir. 1983) ("[A] timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit . . . .") (citations omitted).

The general statute of limitations for filing a refund claim is two years from the date of payment or three years from the date of filing a tax return, whichever is later. § 6511(a).[7]  The parties agree that, if we were to find that § 6511(a) supplies the relevant statute of limitations, then two years would be the applicable length.  Appellant's Br. at 30; Appellee's Br. at 37.  GMI filed administrative refund claims with the IRS on March 28, 2013, which is within two years of having paid the contested LCU interest on April 11, 2011.

Section 6511(a) establishes the limitations period for most claims for refund of overpayment, unless an exception applies.  One exception to § 6511(a) is the six-month limitations period that applies to certain claims arising out of alleged IRS "erroneous[] comput[ations] [of] any computational adjustment."  *See* § 6230(c)(1)(A) (stating that "[a]

---

[6]    No party challenges whether the requirements of § 7422(a) and relevant statutes of limitations in the tax code implicate a court's subject matter jurisdiction.  Accordingly, that question is not at issue in this case.

[7]    Section 6511(a) states:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

§ 6511(a).

partner may file a claim for refund on the grounds that the Secretary erroneously computed any computational adjustment necessary" for certain actions); § 6230(c)(2)(A). Accordingly, under TEFRA, if the IRS erroneously computes a computational adjustment under certain circumstances, the taxpayer must file an administrative refund claim within six months after the IRS mails a notice of computational adjustment to the partner. *Id.*

The Court of Federal Claims agreed with the Government that the six-month limitations period applied because GMI made "a claim for refund on the grounds that . . . the [IRS] erroneously computed a[] computational adjustment necessary . . . to apply to the partner a settlement" under § 6230(c)(1)(A)(ii). *General Mills*, 123 Fed. Cl. at 586–87. The court held that the general two-year limitations period of § 6511(a) had been preempted by the more specific provision of § 6230(c). *General Mills*, 123 Fed. Cl. at 594. The court also found that the IRS had provided GMI with adequate notices of the computational adjustments to trigger the running of the limitations period. *Id.* at 590. With this six-month period having expired, the court held that it lacked jurisdiction to entertain GMI's refund suit. *Id.* at 594.

GMI timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

This court reviews de novo the determination by the Court of Federal Claims that it lacked subject matter jurisdiction. *Wilson v. United States*, 405 F.3d 1002, 1008 (Fed. Cir. 2005). "In determining whether a motion to dismiss should be granted, the Claims Court may find it necessary to inquire into jurisdictional facts that are disputed." *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). The court's findings of fact are reviewed for clear error. *Id.* As the plaintiff, GMI bears the burden of establishing that the court has subject matter jurisdiction over its claims.

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

A.  WHETHER GMI'S REFUND CLAIMS ARE SUBJECT TO THE SPECIAL SIX-MONTH LIMITATIONS PERIOD OR THE GENERAL TWO-YEAR LIMITATIONS PERIOD

1.  GMI'S REFUND CLAIMS FALL WITHIN SECTION 6230(c)

Section 6230(c)'s six-month limitations period, in relevant part, applies to particular claims for refund, including to claims under § 6230(c)(1)(A)(ii) that the IRS "erroneously computed a[] computational adjustment necessary . . . to apply to the partner a settlement." §§ 6230(c)(1)(A)(ii), (c)(2)(A).  GMI argues that its refund claims do not fall under this provision because its dispute over LCU interest allegedly does not involve [1] a "computational adjustment" that was [2] "erroneously computed" and [3] "necessary . . . to apply to the partner a settlement."

We agree with the Court of Federal Claims that GMI's claim that the IRS used the incorrect "applicable dates" to calculate the amount of LCU interest owed falls within the statutory language of § 6230(c)(1)(A)(ii).  By its terms, § 6230(c)(1)(A)(ii) covers circumstances when the IRS makes a computational error when changing a taxpayer's tax liability to properly reflect the treatment of a partnership item based on the settlement of a TEFRA proceeding.[8]

---

[8]    The dissent relies on *United States v. Merriam* for the premise that, "If the words are doubtful, the doubt must be resolved against the Government in favor of the taxpayer." 263 U.S. 179, 188 (1923).  But in *White v. United States*, 305 U.S. 281 (1938), after noting that it was not "impressed" by this very argument, the Court said:

It is the function and duty of courts to resolve doubts.  We know of no reason why that function

That is what GMI alleges the IRS did in this case.  As explained below, the essence of GMI's challenge is to the IRS's computation of the change in its tax liability resulting from the Partnership's settlement of partnership items.

First, we agree with the Court of Federal Claims' analysis that the assessment of LCU interest in this case was the result of a "computational adjustment" as the term is defined by statute and regulation. *General Mills*, 123 Fed. Cl. at 586.  The Internal Revenue Code defines "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment . . . of a partnership item."  I.R.C. § 6231(a)(6).  Moreover, "[a] computational adjustment includes *any interest* due with respect to *any* underpayment . . . of tax attributable to adjustments to reflect properly the treatment of partnership items." Treas. Reg. § 301.6231(a)(6)–1(b) (emphases added); *see also Olson*, 172 F.3d at 1318 (stating that "the [Treasury] regulations set forth that interest is to be included as a computational adjustment").  GMI does not challenge the validity of this Treasury regulation.  The court correctly noted "[t]hat 'any' is the modifier for both 'interest' and 'underpayment' in" § 301.6231(a)(6)–1(b), and thus, "this regulatory provision makes clear that no interest attributable to an underpayment is to be excluded from its reach." *General Mills*, 123 Fed. Cl. at 584.

Second, GMI argues the ground for its refund claims—that the IRS used the incorrect applicable dates to compute the amount of LCU interest—alleges a legal error and not a "computational" error.    According to GMI, "[t]he

---

should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be.

305 U.S. at 292.

underlying dispute . . . turns on a legal disagreement about which statutory provision prescribes the applicable date." Appellant's Reply Br. at 11–12. The Court of Federal Claims found, and we agree, that GMI's claim that the IRS used the incorrect applicable dates is a complaint that the IRS "erroneously computed" the amount of LCU interest. *General Mills*, 123 Fed. Cl. at 586; *see* § 6230(c)(1)(A)(ii).

The Internal Revenue Code does not provide a precise definition of what constitutes an "erroneous[] comput[ation]" under § 6230(c). However, the fact that this provision immediately follows § 6230(b), titled "Mathematical and clerical errors appearing on partnership returns," indicates that the statutory phrase "erroneously computed" refers to a class of errors that is distinct from mere "[m]athematical and clerical errors," as the Court of Federal Claims observed. *General Mills*, 123 Fed. Cl. at 586 (citing *Acute Care Specialists II v. United States*, 727 F.3d 802, 813 (7th Cir. 2013)).

In *Acute Care Specialists II*, the Court of Appeals for the Seventh Circuit rejected the taxpayers' argument that the statutory phrase "erroneously computed any computational adjustment" refers exclusively to mathematical mistakes to the exclusion of substantive issues. 727 F.3d at 812–13. The court in *Acute Care Specialists II* relied on the fact that the Internal Revenue Code provides separately for "[m]athematical and clerical errors" under § 6230(b) and "erroneous[] comput[ations]" under § 6230(c). *Id.* at 813. There, the taxpayers claimed that the IRS erroneously included in its tax computation an adjustment for a deduction that the taxpayers did not actually claim, and the court held that the taxpayers' claim alleged an "erroneous computat[ion]" of a "computational adjustment," thus requiring application of § 6230(c)'s six-month limitations period. *Id.* at 812.

*Acute Care Specialists II* is analogous to the present case. GMI has effectively claimed that the IRS used an

incorrect variable in the formula for computing LCU interest, as the Court of Federal Claims observed. *General Mills*, 123 Fed. Cl. at 586. As with *Acute Care Specialists II*, GMI's complaint is based on a substantive issue with computing a computational adjustment, rather than a mere mathematical or clerical error. Further, while GMI attempts to differentiate between "legal" errors and "computational" errors, we see no basis for making that distinction. GMI cites no authority in support of its argument that the statutory phrase "erroneously computed any computational adjustment" excludes a challenge such as GMI's to the IRS's determination of the applicable date for computing the amount of LCU interest owed.

Third, the six-month limitations period covers circumstances, *inter alia*, where the "computational adjustment" was "necessary . . . to apply to the partner a settlement." § 6230(c)(1)(A)(ii). GMI argues that circumstance does not apply to its case because choosing an applicable date and imposing LCU interest were not "necessary . . . to apply . . . a settlement" to GMI. GMI points to the fact that the Partnership settlement agreements executed by Form 870-LT(AD) did not expressly cover any aspect of how LCU interest would be imposed. Appellant's Br. at 46–47. Instead, GMI argues, a global settlement agreement executed in November 2011 by GMI and its subsidiaries with the IRS carved out "the right [for GMI] to challenge interest calculations made by the Service with respect to" particular tax years that included 2002–2006. J.A. 604.

We agree with the Court of Federal Claims that the IRS's assessment of LCU interest was "necessary . . . to apply" the Partnership settlement agreements to GMI. *General Mills*, 123 Fed. Cl. at 586–87. The Court of Federal Claims noted that the executed Form 870-LT(AD) provided that the IRS could assess "any interest provided by law" against GMI with respect to the settled amounts of tax underpayments for the 2002–2006 tax years. *E.g.*, J.A. 257–58, 262–63, 267–68, 272–73, 379–477. By executing Forms

870-LT(AD), GMI agreed that it "consent[ed] to the assessment and collection of . . . any . . . additions to tax[] and additional amounts that relate to adjustments to partnership items . . . (*plus any interest provided by law*)." *E.g.*, J.A. 257, 262 (emphasis added). Although the Partnership settlement agreements did not explicitly explain how LCU interest would be determined, as the Court of Federal Claims noted, "the tax code prescribes the amount of interest that applies for a large corporate underpayment and the applicable date for determining interest accrual." *General Mills*, 123 Fed. Cl. at 587. We agree with the Court of Federal Claims that because interest was "clearly contemplated" as part of the Partnership settlement agreements, the particular aspects of how LCU interest would be imposed need not have been set forth in the executed Form 870-LT(AD). *See id.*

## 2. SECTION 6511(A) DOES NOT APPLY TO GMI'S REFUND CLAIMS

Unlike the general two-year limitations provision of § 6511(a), the specifically drawn six-month limitations provision of § 6230(c) is particularly tailored to specific types of claims, including, *inter alia*, claims that the IRS "erroneously computed a[] computational adjustment." §§ 6230(c)(1)(A), (c)(1)(C). The statutory language of § 6511(a), which broadly covers "claim[s] for . . . refund of an overpayment of any tax imposed by [the Internal Revenue Code]," could reasonably be read to account for GMI's refund claims. Nonetheless, because GMI's refund claims fall within the narrower, specifically drawn statute, that is the provision that controls. *Hinck v. United States*, 550 U.S. 501, 506 (2007) ("[I]n most contexts, a precisely drawn, detailed statute pre-empts more general remedies.") (quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 434 (2007)) (internal quotations omitted).

GMI next asserts that the policy goal of the shortened six-month limitations period is to allow any errors affecting

the tax liability of multiple partners to flow through the IRS promptly. Oral Arg. at 6:45–8:15, *General Mills, Inc. v. United States*, No. 2019-1124 (Fed. Cir. Nov. 8, 2019), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1124.mp3. Based on that policy goal, GMI argues that any claims that are entirely dependent on one partner's unique factual circumstances should not be governed by the shortened limitations period. *Id.* Further, GMI argues that its challenge to the IRS's assessment of LCU interest depends on the unique factual circumstances of the individual partners. Appellant's Br. at 40–42. GMI fails to point to any authority to support this position. Section 6230(c)'s six-month limitations provision is not so particularly drafted as GMI wishes.

Finally, GMI argues that various other provisions in the Internal Revenue Code, §§ 6511(g), 7422(h), and 6230(d)(6), suggest that the six-month limitations period applies *only* to refund claims that are "attributable to partnership items" and that the general two-year limitations period applies to claims for refund of tax that are "not attributable to partnership items."[9] Appellant's Br. at 31–34. GMI argues that its claim that the IRS applied the incorrect applicable dates is not attributable to a partnership item. *Id.* at 39.

The plain language of § 6230(c), however, gives no hint that the only refund claims governed by the six-month

---

[9] When interpreting § 7422(h), we explained that a tax item is "attributable to a partnership item" if it is "due to, caused by, or generated by a partnership item." *Bush v. United States*, 717 F.3d 920, 925 (Fed. Cir. 2013) (quoting *Keener v. United States*, 551 F.3d 1358, 1365 (Fed. Cir. 2009)); *see also Russian Recovery Fund Ltd. v. United States*, 851 F.3d 1253, 1261 (Fed. Cir. 2017) (defining "attributable to" in I.R.C. § 6229(a) to mean "due to, caused by, or generated by").

limitations period are those for tax "attributable to partnership items." *See* § 6230(c)(2)(A). By its terms, § 6230(c) provides that the six-month limitations period applies to "claims for refund on the grounds that the Secretary erroneously computed any computational adjustment necessary" for certain actions including, among others, "to apply to the partner a settlement." §§ 6230(c)(1), 6230(c)(2)(A). We decline GMI's invitation to read into the six-month limitations provision a new requirement that the refund claims be "attributable to partnership items."

As the Court of Federal Claims noted, none of the provisions cited by GMI, § 6511(g) or § 7422(h), "indicate that refund[] [claims] attributable to partnership items are the *only* instances in which § 6230(c) applies." *General Mills*, 123 Fed. Cl. at 592. We agree with the Court of Federal Claims that §§ 6511(g) and 7422(h) "do not expressly exclude" claims that are not attributable to partnership items "from the reach of section 6230(c)." *Id.* at 594. The same is true for § 6230(d)(6). Instead, those provisions make clear that refund claims "attributable to partnership items" are governed by § 6230(c). *Id.* at 594; *see* §§ 6511(g), 7422(h), 6230(d)(6). Accordingly, §§ 6511(g), 7422(h), and 6230(d)(6) do not confine the universe of refund claims to which the six-month limitations period applies to those that are "attributable to partnership items."

## B. WHETHER THE IRS PROVIDED GMI WITH SUFFICIENT NOTICE OF COMPUTATIONAL ADJUSTMENT

GMI contends that even if the six-month limitations period under § 6230(c) applies, the notices it received from the IRS were inadequate to trigger the running of the limitations period and therefore, the six month period never began. We disagree.

The six-month limitations period is triggered by a "notice of computational adjustment." § 6230(c)(2)(A) (providing that the taxpayer must file a refund claim "within 6 months after . . . the [IRS] mails the notice of

computational adjustment to the partner"). Although § 6230(c) does not define what constitutes adequate notice, "notice must meet the general 'fairness' requirements of due process." *Estate of Yaeger v. Comm'r*, 889 F.2d 29, 35 (2d Cir. 1989) (quoting *Planned Invs., Inc. v. United States*, 881 F.2d 340, 344 (6th Cir. 1989)). In a number of cases, courts have been called upon to examine notices of deficiency, which are issued pursuant to the deficiency procedures set forth in §§ 6211–16, to determine "whether the notice imparted enough information to provide the taxpayer with fair notice." *Scar v. Comm'r*, 814 F.2d 1363, 1367–68 (9th Cir. 1987). To be considered adequate, a notice of deficiency must (i) advise the taxpayer that the IRS determined that a deficiency exists for a particular year, and (ii) specify the amount of the deficiency or provide the information necessary to compute the deficiency. *Acute Care Specialists II*, 727 F.3d at 813 (considering the inquiry for whether a notice of deficiency imparted fair notice to be instructive for deciding whether the IRS provided taxpayer with fair notice of a computational adjustment); *Portillo v. Comm'r*, 932 F.2d 1128, 1132 (5th Cir. 1991) (citing *Donley v. Comm'r*, 791 F.2d 383, 384–85 (5th Cir. 1986)); *Abrams v. Comm'r*, 814 F.2d 1356, 1357 (9th Cir. 1987); *Geiselman v. United States*, 961 F.2d 1, 5 (1st Cir. 1992); *Estate of Yaeger,* 889 F.2d at 35; *Benzvi v. Comm'r*, 787 F.2d 1541, 1542 (11th Cir. 1986); *Del Castillo v. Comm'r*, 92 T.C.M. (CCH) 112, 2006 WL 2346452, at \*2 (2006).

The record shows GMI received interest computation schedules from the IRS dated April 18, 2011 and April 20, 2011 for the 2002–2003 tax years and dated June 14, 2011 for the 2004–2006 tax years. J.A. 334–38, 342–44, 559–63. The interest computation schedules were accompanied by cover letters (Letter 3535)[10] informing GMI that: "As

---

[10] The Internal Revenue Manual states that the interest computation cover letter (Letter 3535) should be

required by Internal Revenue Code Section 6631, [the IRS is] providing a copy of the schedule we used to calculate interest on the tax adjustment for the return" for each respective tax year. J.A. 334, 342, 559. The interest computation schedules themselves identified GMI's tax underpayments, payments, and refunds for each of the tax years and computed the amount of interest (including LCU interest) on GMI's tax underpayments that had accrued to date.

Further, each of the interest computation schedules identified the "applicable date" in two places: the line titled "LCU Interest Date" and the line for the earliest date of "Underpay LCU." The schedules for the 2002 and 2003 tax years each stated, "LCU Interest Date: 07/15/2007," as the Court of Federal Claims noted. *General Mills*, 123 Fed. Cl. at 590 (citing J.A. 335, 337). The interest computation schedules described the accrued interest as "Underpay" for the dates prior to and including July 15, 2007 and as "Underpay LCU" for the dates following July 15, 2007. J.A. 336, 338. The schedules thus informed GMI that interest accrued at the default underpayment rate prior to and on July 15, 2007, and then at an enhanced interest rate following July 15, 2007. *Id.* Likewise, the schedules for the 2004, 2005, and 2006 tax years each stated, "LCU Interest Date: 05/29/2009," as the Court of Federal Claims noted. *General Mills*, 123 Fed. Cl. at 590. The schedules described the accrued interest prior to and on this date as "Underpay" and after this date as "Underpay LCU." J.A. 560, 562–63. In other words, the schedules showed

---

used "when providing an interest computation report to the taxpayer as required by IRC 6631." Internal Revenue Manual § 20.2.8.3 (2011). Further, "IRC 6631 requires that an explanation of interest computation be sent to an individual (IMF) taxpayer with each notice; which includes an amount of interest required to be paid." *Id.*

GMI that, after May 29, 2009, the IRS began calculating accrued interest at a higher interest rate than the default underpayment rate. *Id.*

We agree with the Court of Federal Claims' conclusion that the schedules provided GMI with fair notice of a computational adjustment as to LCU interest and were adequate to trigger the running of the limitations period. *See General Mills*, 123 Fed. Cl. at 590. The schedules clearly informed GMI that the IRS had imposed the enhanced interest rate for large corporate underpayments at specific trigger dates. The schedules clearly identified July 15, 2007 and May 29, 2009 as the applicable dates for computing LCU interest for 2002–2003 and 2004–2006, respectively. The schedules further informed GMI of the amount of LCU interest actually assessed due to the enhanced interest rate for each tax year.

GMI contends that the notices were defective for various reasons. First, GMI says that the IRS was required to give notice that "a jurisdictional period was being triggered," and the schedules failed to mention § 6230(c) or the six-month limitations period. *See* Appellant's Br. at 56–57. GMI also argues that the schedules were tainted by the failure to mention the Partnership proceedings and the failure to separate the accrued interest on underpayments resulting from the corporate proceedings from that of the Partnership proceedings. These contentions lack merit. The Court of Federal Claims stated that the notice of computational adjustment need not be in any particular form, and we agree. *General Mills*, 123 Fed. Cl. at 589; *see Urban v. Comm'r*, 964 F.2d 888, 890 (9th Cir. 1992); *Abrams v. Comm'r*, 787 F.2d 939, 941 (4th Cir.1986); *Benzvi*, 787 F.2d at 1542. Indeed, the Internal Revenue Code does not define what a notice of computational adjustment should contain.

In *Acute Care Specialists II*, the taxpayers claimed that the IRS failed to provide adequate notice of computational adjustment, even though the IRS mailed them a

Form 4549A showing the amount of tax deficiency and the balance due.  727 F.3d at 812–13.  The Form 4549A "did not, however, specifically indicate that it was a notice of computational adjustment or state the length of time that the [taxpayers] had in which to challenge the adjustment." *Id.* at 812.  The Seventh Circuit found the Form 4549A met the standard for adequate notice because it showed "the existence and amount of the [taxpayers'] tax deficiency." *Id.* at 813.  Here, the interest computation schedules gave GMI fair notice of the tax years at issue, the means to compute the accrued LCU interest, and the balance due.  In other words, the schedules provided GMI with all the information it needed to assess whether the IRS may have erroneously computed the computational adjustment.

GMI urges upon us the case of *McGann v. United States*, 76 Fed. Cl. 745 (2007), as analogous to this case.  GMI argues that, like in *McGann*, the IRS provided GMI with misleading information that contradicts the documents the Government now relies on for providing adequate notice.  GMI points to the cover letters accompanying the interest computation schedules that stated: "[The IRS] will either send you a bill within the next few weeks or send you a statement of any refund." J.A. 334, 342, 559.  According to GMI, the cover letters "suggest[ed] that a refund could be automatic." Appellant's Br. at 56.  GMI also suggests that, based on other documents provided by the IRS, the IRS misled it to believe LCU interest would *not* be imposed.  GMI refers to interest computation schedules for the 2004 and 2005 tax years that were issued by the IRS prior to, and were later superseded by, the June 14, 2011 interest computation schedules.  The superseded interest computation schedules stated, "LCU Interest Date: LCU Interest is OFF." J.A. 339, 341.  GMI also points to a Form 4549-A, issued on March 4, 2011 to inform GMI of its underpayments for the 2004–2006 tax years.  GMI argues the Form 4549-A was misleading because it showed "0" (zero) in the line for "Interest (IRC § 6601)." J.A. 483.

We agree with the Court of Federal Claims that *McGann* is not analogous to GMI's case. *General Mills*, 123 Fed. Cl. at 590. The Court of Federal Claims determined that, unlike in *McGann*, "none of the notices sent by the IRS to [GMI] in this case were misleading or contradictory." *Id.* By stating that the IRS would either send a bill or send a refund, the cover letters could not have reasonably misled GMI to conclude that it need not file an administrative refund claim in order to contest the IRS's calculation of the amount of LCU interest owed. *See* J.A. 334, 342, 559. Nor were the superseded interest computation schedules misleading as to whether LCU interest would be imposed on GMI. The schedules simply notified GMI that the IRS would later account for LCU interest in subsequently issued interest computation schedules. These documents were not misleading or contradictory as to identifying the amount of LCU interest due and the years at issue. *See Estate of Yaeger*, 889 F.2d at 35 ("The taxpayer must demonstrate that the notice was misleading.").

The Form 4549-A, issued on March 4, 2011 for the 2004–2006 tax years, does not change our conclusion. As a general rule, notices containing technical defects are still valid unless the taxpayer has been prejudiced or misled by the error. *See Stewart v. Comm'r*, 714 F.2d 977, 986 (9th Cir. 1983) ("The basic consideration is whether the taxpayer is surprised and disadvantaged.") (quoting *Comm'r v. Transp. Mfg. & Equip. Co.*, 478 F.2d 731, 736 (8th Cir. 1973)); *see also Sanderling, Inc. v. Comm'r*, 571 F.2d 174, 176 (3d Cir. 1978) (finding that the deficiency notice is valid if a taxpayer has not been misled as to the year or amount involved; notice was valid since it referenced correct year and transaction despite references to wrong years); *Estate of Yaeger*, 889 F.2d at 36 (finding that the deficiency notice was valid, even though it incorrectly identified year in question, because information in notice was sufficient for taxpayer to determine actual year in

question).    As the Court of Federal Claims noted, the Form 4549-A was accompanied by a cover letter informing GMI of the conditions under which the IRS would impose the enhanced interest rate on large corporate underpayments.    J.A. 478 ("If you are a 'C' Corporation, Section 6621(c) of the Internal Revenue Code provides that an interest rate 2% higher than the standard rate of interest will be charged on [large corporate underpayments]."). We agree with the Court of Federal Claims that, irrespective of the documents issued prior to the interest computation schedules, by the time GMI "receive[d] the detailed interest computation schedules, [GMI] was well aware of the IRS's computation of its LCU interest and the interest accrual dates the IRS had used." *General Mills*, 123 Fed. Cl. at 590.  GMI could not have been prejudiced or misled as to the IRS's intent to impose LCU interest for the 2004–2006 tax years, as well as the amounts, once it received the interest computation schedules on June 14, 2011.

In sum, at the latest, the six-month limitations period began to run by April 2011 and June 2011 for the 2002–2003 and the 2004–2006 tax years, respectively.  GMI did not file its refund claims until March 28, 2013, which was over a year too late.  Accordingly, GMI did not file a timely claim for refund under the governing statute.  *See* § 6230(c)(2)(A).

## CONCLUSION

GMI's refund claims based on alleged IRS computational errors were brought well after the period established by the applicable statute of limitations had run.  Accordingly, the Court of Federal Claims correctly determined that it lacked subject matter jurisdiction over GMI's refund claims.

## **AFFIRMED**

# United States Court of Appeals for the Federal Circuit

---

**GENERAL MILLS, INC. AND SUBSIDIARIES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-1124

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00089-PEC, Judge Patricia E. Campbell-Smith.

---

NEWMAN, *Circuit Judge*, dissenting.

I respectfully dissent, for this interest refund claim was timely filed in conformity with the statutory time period for filing such claim. That period is two or three years after the payment was made or the tax return was filed, as provided in 26 U.S.C. § 6511(a):

> **§ 6511(a).** Period of limitation on filing claim. Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the

later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

There was a special 6-month period in TEFRA[1] for filing claims arising from "computational adjustment" of "partnership items," at 26 U.S.C. § 6230(c)(2)(A):

> **§ 6230(c)(2)(A).** [repealed]  Any claim under subparagraph (A) or (C) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

This 6-month period applied to § 6230(c)(1)(A)(ii), specific to computational adjustments of a partner's tax liability based on settlement, adjustment, or decision:

> **§ 6230(c)(1)(A)(ii).** [repealed]  A partner may file a claim for refund on the grounds that . . . the Secretary erroneously computed any computational adjustment necessary . . . to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a).

The question on appeal is whether the special 6-month limitations period applies to the present claim for refund of

---

[1]    This provision arose in the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA").  Pub. L. No. 97-248, §§ 6221–6232, 96 Stat. 324, 648–71.  TEFRA amended the Internal Revenue Code by adding Subchapter C, codified at 26 U.S.C. §§ 6221–6232.  The special 6-month limitation period was repealed in 2015.  *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625 ("(a) REPEAL OF TEFRA PARTNERSHIP AUDIT RULES.—Chapter 63 of the Internal Revenue Code of 1986 is amended by striking subchapter C.")

overpayment of interest. Interest is required and calculated and levied in accordance with the general tax law. This claim for refund of interest was filed in accordance with the general rules for filing refund claims under § 6511(a). The court errs in applying, to this interest refund claim, the 6-month limitations period that was specific to computational adjustment of tax on partnership items.

## A

The statutory scheme contained several special provisions to provide clarity and assure absence of conflict between these statutory periods of limitation. For example, 26 U.S.C. § 6231(a)(6) elaborated that "computational adjustment" in these sections relates to the tax treatment of partnership items:

> **§ 6231(a)(6).** [repealed] The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item.

The payment of interest is not a "tax liability."

The Internal Revenue Manual elaborates on the meaning of "computational adjustment":

> **IRM 8.19.1.6.9.3.1.** A direct computational assessment is only appropriate where the effect of the partnership item on the partner's tax liability can be computed mathematically without further determinations at the partner level. If an additional factual determination is required, the adjustment cannot be made as a computational adjustment.

Additional elaboration of the role of these provisions is seen in the statutory definition of "partnership item":

> **§ 6231(a)(3).** [repealed] The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the

4                               GENERAL MILLS, INC. v. UNITED STATES

> partnership's taxable year under any provision of
> subtitle A to the extent regulations prescribed by
> the Secretary provide that, for purposes of this sub-
> title, such item is more appropriately determined
> at the partnership level than at the partner level.

Precedent has considered the scope of "partnership item" under these provisions, *see, e.g.*, *Prochorenko v. United States*, 243 F.3d 1359 (Fed. Cir. 2001):

> Construing the phrase "attributable to partnership
> items" so broadly as to cover claims that depend on
> the unique circumstances of an individual partner,
> and that only affect that partner, would be contrary
> to the system of separate treatment of partnership
> items and nonpartnership items established by
> Congress in enacting TEFRA.

*Id.* at 1363; *see also Field v. United States*, 328 F.3d 58, 59 (2d Cir. 2003); *Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000); *McGann v. United States*, 76 Fed. Cl. 745, 753 (2007).

## B

On this statutory background, General Mills, Inc. & Subsidiaries (collectively, "GMI") filed the subject claim for refund of overpaid interest, within two years of GMI's voluntary payment of its estimated interest. The IRS denied the requested refund, and GMI filed this refund suit in the Court of Federal Claims.[2]

GMI outlines the lengthy history of these proceedings for tax years starting in 2002, and including Partnership Proceedings and Corporate Proceedings involving

---

[2]    *General Mills, Inc. v. United States*, 123 Fed. Cl. 576 (2015) ("Fed. Cl. Op.").

overlapping entities.  The tax obligations were eventually settled and paid.

For the 2002–2003 tax years, GMI entered into settlement agreements with the IRS in July of 2010, using Form 870-LT(AD) entitled *Settlement Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax and Additional Amounts and Agreement for Affected Items*, which states that interest will be assessed as "provided by law."  J.A. 257, 262, 267, 272, 278, 287, 296, 305, 314, 323.  The IRS also sent GMI a Form 5278 in August 2010 that provided computational adjustments in the assessed tax, which included a letter that stated: "We will adjust your account and figure the interest.  The Service Center will send a bill for any additional amount you owe."  J.A. 332.  GMI states, without contradiction, that "No such bill was ever sent."  GMI Br. 14.

For the 2004–2006 tax years, GMI entered into settlement agreements with the IRS in November of 2010, using Form 870-LT(AD), which stated that interest will be assessed as "provided by law."  J.A. 380, 388, 398, 408, 418, 428, 438, 448, 458, 468.  The IRS sent GMI Form 4549-A, entitled *Income Tax Discrepancy Adjustments*, which shows "0" on the interest lines for years 2004–2006.  J.A. 482–83.

GMI states that on April 11, 2011 it calculated and paid its estimated amount of interest for both the 2002–2003 and 2004–2006 tax periods "in order to stop the accrual of interest."  GMI Br. 15, 20.

On April 18, April 20, and June 14, 2011, the IRS sent GMI Letters 3535 and attachments, stating that:

> As required by Internal Revenue Code Section 6631, we are providing a copy of the schedule we used to calculate interest on the tax adjustment for the return identified above.  This computation is for your information.    The enclosed Interest

> Computation Schedule is not a bill for tax due.  We
> will either send you a bill within the next few
> weeks or send you a statement of any refund.

J.A. 334, 342, 559.  Neither bill nor refund followed.  The
Majority states that "the schedules provided GMI with fair
notice of a computational adjustment as to LCU interest
and were adequate to trigger the running of the limitations
period" of § 6230(c).  Maj. Op. at 25.  This is not statutory
notice under the tax law.

This 6-month limitations period ends "6 months after
the day on which the Secretary mails the notice of compu-
tational adjustment to the partner."    26 U.S.C.
§ 6230(c)(2)(A).  However, the notice relied on by the Ma-
jority "bears no indication that it is to be taken as a notice
of computational adjustment, nor does it disclose that [the
taxpayer] would have had to contest any amounts said to
be due within a six-months' period thereafter."  *McGann*,
76 Fed. Cl. at 760.  At best, the Majority has pointed to
documents from which GMI may  "decipher the position
that the IRS might in fact be taking respecting interest."
*Id.* at 761.  The inadequacy of notice of the amount of in-
terest is conspicuous; for there was no assessment of inter-
est during the period now held to have exhausted the 6-
month refund period.

The record contains a copy of a Global Settlement
Agreement, IRS Form 870-AD, prepared by the IRS and
executed by GMI in November 2011 and the IRS in Decem-
ber 2011, that states that:

> The Taxpayer reserves the right to challenge Inter-
> est calculations made by the Service with respect
> to all years/periods covered by [the settlement
> agreement].

J.A. 604–05.  GMI points out that by the time of this agree-
ment, which stated GMI's reserved right to challenge inter-
est calculations, "the six-month limitations period that the

government now argues applies had expired." GMI Reply Br. 23. The government does not dispute this statement, or explain its position in contradiction of the explicit statement in the agreement it drafted.

## C

The refund claim here at issue is not for a "computational adjustment" of a "partnership item." It is for refund of an overpayment of interest. This claim is subject to the standard two-year period of 26 U.S.C. § 6511(a).

The government takes the position that this refund claim is barred by the 6-month period of § 6230(c). The Court of Federal Claims agreed, holding that it is it "irrelevant" whether this refund claim is "attributable to a partnership item" as required by § 6230(c). Fed. Cl. Op. at 592–93. My colleagues now agree.

My colleagues hold that this is a matter of "preemption" between conflicting statutes, whereby the narrower statute preempts the general one. Maj. Op. at 20. However, there is no conflict between the 6-month period of § 6230(c) and the 2–3 year period of § 6511(a), for they apply to different aspects of the tax law. Section 6230(c) is specific to the 6-month period for review of computational adjustment of partnership items, and § 6511 sets the standard 2–3 year period for refund claims.

Throughout the TEFRA statute, the legislature carefully defined its focus and clarified its provisions. For example, section 6511(g) made explicit that only partnership items are subject to the 6-month limit:

> **§ 6511(g).** [repealed] In the case of any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (as defined in section 6231(a)(3)), the provisions of . . . subsections (c) and (d) of section 6230 shall apply in lieu of the provisions of this subchapter [which includes section 6511(a)].

The statute itself foresaw, and forestalled, any conflict between these periods of limitation.  There is a "strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citing *United States v. Fausto*, 484 U.S. 439, 452–53 (1988)) (internal quotation marks and alterations omitted); *see also id.* ("When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both.") (internal quotation marks omitted).

The legislative record contains no hint that Congress intended to truncate the standard period for filing interest refund claims and to enlarge the explicit scope of § 6230(c). The enactment and then cancellation of the special 6-month period of limitations for computational adjustments of tax on partnership items did not change the general 2–3 year statutory period applicable to a claim for refund of interest paid.

The government's present theory, now supported by this court, confronts constitutional principles of judicial review, as well as the policy embodied in adjudication of taxpayer issues.  *See, e.g., United States v. Merriam*, 263 U.S. 179, 188 (1923) ("If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer."); *Bowers v. New York & Albany Lighterage Co.*, 273 U.S. 346, 350 (1927) ("The provision is a part of a taxing statute; and such laws are to be interpreted liberally in favor of the taxpayers.").

These principles of fairness are not obsolete, as the panel majority proposes.  *See, e.g., United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 839 (2001) (Thomas, J., concurring) ("[I]n cases such as this one, in which the complex statutory and regulatory scheme lends

itself to any number of interpretations, we should be inclined to rely on the traditional canon that construes revenue-raising laws against their drafter."). This is not a matter whereby the court can simply look to "every other material part of the statute" and "their legislative history," as in *White v. United States*, 305 U.S. 281, 292 (1938), on which the panel majority relies; its interpretation requires preemption of the general limitation statute. Maj. Op. at 16 n.8, 20. As in this case, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer." *Xerox Corp. v. United States*, 41 F.3d 647, 658 (Fed. Cir. 1994) (quoting *Hassett v. Welch*, 303 U.S. 303, 314 (1938)); *see also Irwin v. Gavit*, 268 U.S. 161, 168 (1925) (although "the tax laws should be construed favorably for the taxpayers . . . that is not a reason for creating a doubt or for exaggerating one").

## CONCLUSION

GMI has the clear right to be heard on its claim for refund of interest paid, which claim was filed within the 2-year period set by § 6511(a) for refund of payments made. The Court of Federal Claims, and now my colleagues, err in ruling that this claim was required to be filed within 6 months of an unknown date for which no notice was given. I respectfully dissent.